B. F. OVERHOLT, Appellant, v. O. H. BURBRIDGE and A. W. COPPS, Copartners, Doing Business as BURBRIDGE, COPPS & COMPANY, Respondents.

**No. 1586.    (79 Pac. 561.)**

1.  **Gaming: Wagering Contracts: Illegality: Agent.**
    A bucket shop which accepted a margin to cover a short sale of stock to a third party, who took the long side of the deal, and who finally paid to the bucket shop for the seller the difference between the market and sale price of the stock, acted merely as agent of the seller and buyer, and was not a principal in the illegal wagering transaction.

2.  **Same: Actions: Enforcement.**
    Courts will not lend their aid to enforce contracts which are illegal, or the performance of which is against public policy.

3. Same: Defense.

  A bucket shop which accepted a margin to protect a short sale of stock to a third person, who took the long side of the deal, and who finally paid the bucket shop, for the seller, the difference between the market price of the stock at the time of settlement and the sale price, could not, when sued by the seller for his profit, assert the illegality of the transaction between the seller and the buyer.

(Decided February 6, 1905.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse,* Judge.

Action for money had and received. From a judgment in favor of the defendants, the plaintiff appealed.

REVERSED.

*W. R. Hutchinson, Esq.,* and *A. R. Barnes, Esq.,* for appellant.

There is no attempt on the part of the plaintiff in this case to enforce the original transaction. That has been executed. The plaintiff does not ask the court to recognize that transaction or give aid to it. It is the defendants who are seeking to invoke the alleged illegal transaction as a defense. The plaintiff is simply seeking to recover a sum of money now in the hands of the defendants, and admitted by them to belong to the plaintiff.

The plaintiff having established his case without invoking to his aid the alleged illegal contract, and the defendants having admitted the alleged indebtedness, the defendants should not be allowed to avail themselves of any illegality there may have been in the original transaction. This has been the holding of the courts from the very beginning. It is the settled law

in England, as shown by a long line of decisions, and the same principle has been universally adopted by our courts. The principle here relied upon is clearly stated by Justice Strong in the case of Planters Bank v. Union Bank, 16 Wallace, 483. · Tennant v. Elliott, 1 B. & P. 3; Brooks v. Martin, 2 Wall. 70; McDonald v. Lund (Wash.), 43 Pac. 348; Peters v. Grim (Pa.), 24 Atl. 192; Munns v. Com. Co. (Ia.), 91 N. W. 789.

See also in support of the above proposition, the following cases: Farmer v. Russell, 1 B. & P. 296; Petrie v. Hannay, 3 Term 418-419; Sharp v. Taylor, 2 Ph. Ch. 801; Telephone Co. v. Railroad, 3 Fed. Rep. 423-427; Railroad v. Railroad, 66 New Ham. 132, 20 Atl. Rep. 386; Buchanan v. Bank, 55 Fed. Rep. 226; Hatch v. Hansen, 46 Mo. App. 334-335; De Leon v. Tervino, 49 Texas 89; Pfeuffer v. Mallby, 54 Texas 454; Floyd v. Patterson, 72 Texas 202; Gilliam v. Brown, 43 Miss. 641; Elder v. Tallcott, 43 Ill. App. 439; Repplier v. Jacobs, 149 Pa. St. 167; Clark v. Brown, 77 Ga. 606. McNaughton v. Holdeman, 160 Pa. St. 144.

*Messrs. Ryckman & Sawyer* for respondents.

No brief on file for reporter.

### STATEMENT OF FACTS.

This is an action for money had and received. The complaint, in substance, alleges: (1) That defendant is a copartnership composed of O. H. Burbridge and A. W. Copps, doing business as Burbridge, Copps & Co., associated together for the purpose of conducting a brokerage business in Salt Lake City, Utah. (2) That on or about the 1st day of September, 1901, plaintiff placed in the hands of defendants the sum of $2,060, to be invested by them in stocks, and that said sum yielded after being so invested, less all commissions and expenses due defendants, the sum of $3,267.85; that no part of said sum has been paid except

the sum of $1,740, which was paid by defendants and credited upon said account on the 6th day of February, 1902. (3) That said sum of $1527. 85 is the money of the plaintiff, and is held by defendants in trust for plaintiff. The complaint further alleges that the defendants refuse to pay said sum to plaintiff, or any part thereof. Defendants, in their answer, admit the receipt of the $2,060 mentioned in the complaint from plaintiff, but allege that this amount was received as a margin in carrying on what they designate as a wagering or gambling transaction; that defendants were associated under the firm name and style of Burbridge, Copps & Co., for the exclusive purpose of conducting a bucket shop, a place kept for the exclusive purpose of wagering and gambling in the future price of the stock of corporations, and the future price of other commodities; that on the date mentioned in plaintiff's complaint, plaintiff and defendants entered into a gaming contract for the express purpose of speculating and wagering in the future price of the stock of the American Sugar Refining Company, a corporation duly organized and existing at that time, and having shares of stock; that defendants undertook, in form, to sell short for the plaintiff 100 shares of the stock of said American Refining Company, to be delivered at a future date; that plaintiff was not possessed of any of said stock, nor did he intend to go into the market to purchase the same for delivery, but it was the intention of the parties, both plaintiff and defendants, to neither receive nor deliver said 100 shares of said stock, but solely to wager on the market price thereof, and to pay or receive the difference between the price at the time the said wagering contract was first made and the market price at a future date; that on the 23d day of December, 1901, the plaintiff ordered the transaction closed, and it was ascertained and determined that, after deducting commission and an amount equal to the dividends paid in the meantime on the 100 shares of stock, plaintiff had won the sum of $1,011.75; that defendants

returned and paid to plaintiff a portion of the $2,060,. deposited with the defendants as a marginal protection. as aforesaid, to wit, the sum of $1,740.

Upon the issues raised by the pleadings, evidence was introduced at the trial which showed that plaintiff delivered to defendants, which was accepted by them,. the sum of $2,060, as a marginal protection in a certain trade or transaction, wherein the defendant, acting as agents for the plaintiff, undertook to sell short for him 100 shares of the stock of the American Sugar Refining Company to Wendt & Co., who, to quote the evidence of defendant Copps, "took the buying side, whence, if the market advanced, Wendt & Co., won, and Overholt [the plaintiff] lost, or vice versa." The $2,060 deposited with defendants by plaintiff was to protect Wendt & Co.. in case the price of the stock advanced; that is, Wendt. & Co. were to be paid a sum equal to all dividends declared on his amount of stock before the transaction closed, and while the deal remained on, and a sum equal to the amount of the advance in price, if any, on said amount of stock. Defendants were not possessed of the shares of stock of the American Sugar Refining Company, or was it understood that they should go into the market to purchase the same for delivery, but it was. the intention of the parties to wager on the market. price thereof, and to pay or receive the difference between the price at the time the contract was first made, and the market price at a future date. At the time of the transaction, September, 1901, the market price as quoted on the New York Exchange, was $133.75 per share. At the time plaintiff ordered the deal closed the market price of the stock was $115 per share, representing a gain for plaintiff of $18.75 per share, or a sum total of $1,875 paid by Wendt & Co., from which Burbridge, Copps & Co., defendants, deducted the dividends and their commission, amounting in all to $863.25, leaving a gain to plaintiff of $1,011.75, which, together with the $2,060 originally deposited by plaintiff with defendants, made $3,071.75 of plaintiff's money held by

defendants, for which amount defendants gave plaintiff credit on their books, and later on remitted to plaintiff the sum of $1,740, leaving a balance due plaintiff of $1,340.35. It appears from the record that the principals to this transaction were plaintiff and Wendt & Co., and that defendants were merely the agents for the principal actors. A. W. Copps, one of the defendants, testified on this point as follows: "The trade, as taken by Burbridge, Copps. & Co., would signify that B. F. Overholt [plaintiff] had bet with Wendt & Co. that the said shares of the American Sugar Refining Company would decline in value, and hence had 'shorted' or 'sold' to them 100 shares of the American Sugar Refining Company at a given price, Wendt & Co. taking the buying side." It is admitted that there is a balance of $1,340.35 due plaintiff from defendants. The court, in the third finding of fact, found that "the plaintiff bet the defendants that the price of sugar stock would go down, and the defendants bet the plaintiff that the price of sugar stock would go up." The court further found as a conclusion of law: "(2) That the sum of $1,011.75, above referred to, represents the money won by plaintiff from the defendants upon the aforesaid illegal wager, and, as such, the same cannot be recovered. (3) That the $2,060 above referred to, which was deposited with the defendants by the plaintiff as a marginal protection, was so deposited for the sole purpose of furthering and carrying out the said illegal wager, and, as such, became the instrument of a wager, and, that the payment of said money was a part of the above illegal and void transaction, and cannot be recovered back."

Judgment was entered for defendants, and the action dismissed. Plaintiff appeals.

McCARTY, J., after the foregoing statement of the case, delivered the opinion of the court.

Appellant contends that the wagering on the rise and fall of stocks was not between plaintiff and defendants, as found by the court, but that the undisputed evi-

dence shows exclusively that the illegal transactions pleaded as a defense were between plaintiff and Wendt & Co. We think appellant is right in his contention, and that the court erred in its findings on this point. The record shows that defendants received $2,060 from plaintiff as a marginal protection to Wendt & Co., who "took the buying side of the deal," which deal was brought about, carried on, and finally consummated by plaintiff and Wendt & Co., through defendants, who acted as the agents of both parties. The defendants put up no money and took no chances pecuniarily in the transaction. After the deal was closed, and Wendt & Co. had paid defendants the difference in the price of the stock represented in the transaction, and defendants had deducted the dividends and their commissions due them for their services, there was found to be due plaintiff the sum of $3,080.35, of which amount plaintiff received from defendants $1,740, leaving a balance in their hands of $1,340.35 of his money. Therefore the important question involved in this case is, can defendants successfully plead as a defense the illegality of a deal between plaintiff and Wendt & Co., and which transaction has been closed, and the money paid over to defendants, who hold it merely as a depositary for plaintiff?

It is a well-settled rule that courts will not lend their aid, and enforce contracts which are illegal, or the performance of which is against public policy. It is admitted that the contract for the sale of the stock by plaintiff, and the purchase of the same by Wendt & Co., was a wagering or gambling contract, and therefore illegal and void; but, as we have already observed, the transactions growing out of that contract were closed, and the money in question paid by Wendt & Co. to defendants, and was by them credited on their books to plaintiff, less their commissions. This action was not commenced to enforce the contract pleaded as a defense, but to recover money which is held on deposit by defendants for plaintiff, and to which they do not as-

Overholt v. Burbridge et al.

sert any title; defendants' sole defense being that, because a portion of the money in question was obtained from Wendt & Co. through a wagering contract which was illegal and against public policy, plaintiff ought not to be permitted to recover, and that they be permitted to retain that which they confess belongs to plaintiff. That is, they have pleaded an illegal contract which the evidence shows was entered into between plaintiff and Wendt & Co., to which defendants were not parties, except as agents, as hereinbefore stated, of the principal actors, to defeat a recovery for money which had been paid to them for plaintiff. When this money was paid to defendants for the plaintiff, the illegal contract pleaded by defendants was closed—had terminated—and a new obligation created, by which defendants became indebted to plaintiff, and their liability to pay plaintiff this money in no way depended upon the legality of the contract between plaintiff and Wendt & Co. The authorities almost uniformily hold that when an illegal contract has been fully executed, and the interest and differences of the parties to it adjusted and agreed upon, and the money arising therefrom deposited to the credit of one or more of the respective parties, such depositary cannot, when sued by the party or parties to whom the money is due, successfully plead the illegality of the contract or transaction through which the money was originally obtained. This doctrine is clearly stated in the case of Planters' Bank v. Union Bank, 16 Wall. 483, 21 L. Ed. 473, as follows: "When an illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have actually been received, and received in that which the law recognizes as having had value; and when this has been carried to the credit of the plaintiff—the case is different. The court is not there asked to enforce an illegal contract. The plaintiffs did not require the aid of any illegal transaction to establish their cause. It is enough that defendants have in their hands a thing of value that belongs

to them." In Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732, which was a case where a partnership, in violation of a United States statute, had been engaged in buying up soldiers' land claims before the warrants for such claims were issued, it was held that, after the contract which was confessedly against public policy had been carried out, a partner in whose hands the profits were, could not refuse to divide them on the ground of the illegal character of the original contract. The court, in the course of the opinion says: "Does it lie in the mouth of the partner who has by fraudulent means obtained possession and control of all these funds to refuse to do equity to his other partner because of the wrong originally done or intended to the soldier? It is difficult to perceive how the statute enacted for the benefit of the soldier is to be rendered any more effective by leaving all this in the hands of Brooks, instead of requiring him to execute justice as between himself and his partner, or what rule of public morals will be weakened by compelling him to do so? The transactions which were illegal have become accomplished facts, and cannot be effected by any action of the court in this case." The same question was before the Supreme Court of Washington in the case of McDonald v. Lund, 43 Pac. 348, and that court, in a well-considered opinion, in which many of the leading cases on this question were cited and reviewed, held that where parties had been engaged as a partnership in carrying on games of chance, and the business had been closed and a division of the profits agreed upon, and the plaintiff's portion amounted to $431.25, the money being held by defendant, he (the defendant) could not, in a suit by the plaintiff to recover this amount, set up the illegal character of the business carried on under the original contract of partnership. The court said: "Again, this is not a case to enforce any illegal contract, but it is to assert title to money which was accumulated under such illegal contract. If the plaintiff here had brought an action against the defendant for not complying with this contract in running these games, of course, it would fall within the rule

claimed by the respondent; but here the real contract upon which he sues, it seems to us, is a contract of deposit. Under the stipulated facts, the illegal transaction which these parties had agreed to pursue had ended . . . A determination of the amount of money due from the defendant to the plaintiff had been reached.    It was agreed that the defendant owed the plaintiff the sum of money sued for, and that he was entitled to that amount, and the plaintiff's portion was simply left with the defendant on deposit. . . .    This distinction, viz., the difference between suing on or trying to enforce the illegal contract itself, and a suit to recover money which is admitted to be due, although it may have been obtained by prosecuting an illegal enterprise, has always been respected by the courts, from its announcement in the cases we have above cited up to the present time.'' In the case of Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787, the court says: ''When the plaintiff shows that the defendant has received of a third party money for his use, the law from the naked fact implying a promise, the case is made out, without going into illegal transaction, and the defendant will not be permitted to set up the illegality of the original contract in order to defeat a recovery.''   In 9 Cyc. 557, this doctrine is stated in the text with approval, as follows: ''It results from this doctrine that, if money has been actually paid to an agent or to a partner, the illegality of the transaction of which the money was the fruit, or the fact that the firm venture from which the profits have arisen was an illegal one, does not affect the right of the principal or partner to recover the money from the agent or copartner in whose hands it is. The ground taken is that, although the law would not have assisted the principal or partnership by enforcing the recovery of it from the party by whom it was paid, because the law will not aid the completion of an illegal contract, yet, when that contract is at an end, the agent or partner whose liability arises solely from having re-

28 Utah—27

ceived the money for another's use can have no right to claim it. . . . If one of the parties to an illegal and unenforceable contract, who has received profits under it, admits that a specified sum is due to the other party, it has been held that the latter may maintain an action upon an account stated between them, or, if he has made a special promise to pay him, the action may be brought on that promise." The following cases uphold and declare this same doctrine: Peters v. Grim (Pa.), 24 Atl. 192, 34 Am. St. Rep. 599; Munns v. Donavan Com. Co. (Iowa), 91 N. W. 789; Farmer v. Russell, 1 B. & P. 296; Petrie v. Hannay, 3 Term, 418, 419; W. U. Telegraph Co. v. U. P. R. Co. (C. C.), 3 Fed. 423; Manchester R. Co. v. R. Co., 66 N. H. 132, 20 Atl. 383, 9 L. R. A. 689, 49 Am. St. Rep. 582; Buchanan v. Bank, 55 Fed. 226, 5 C. C. A. 83; Hatch v. Hanson, 46 Mo. App. 334; DeLeon v. Trevino, 49 Tex. 89, 30 Am. Rep. 101; Pfeuffer v. Maltby, 54 Tex. 454, 38 Am. Rep. 631; Gilliam v. Brown, 43 Miss. 641; Elder v. Talcott, 43 Ill. App. 439; Repplier v. Jacobs, 149 Pa. 167, 24 Atl. 194; Clark v. Brown, 77 Ga. 606, 4 Am. St. Rep. 98; McNaughton v. Haldeman, 160 Pa. 144, 28 Atl. 647.

We are of the opinion that the facts in this case, when applied to the foregoing principles of law, clearly establish plaintiff's right to recover, and that the court erred in finding the issues in favor of defendants and dismissing the action.

The judgment is reversed, with directions to the trial court to proceed in accordance with the views herein expressed. Costs to be taxed against respondents.

BARTCH, C. J., and STRAUP, J., concur.