MARTINDALE *et al.* v. SHAHA.

No. 4097. Opinion filed August 3, 1915.

Rehearing Denied October 12, 1915.

(151 Pac. 1019.)

1. MONEY RECEIVED—Petition—Sufficiency. The petition set out in the record states a cause of action for money had and received, and a general demurrer thereto was properly overruled.

2. CONTRACTS—Money Received—Attorney's Fee—Implied Contract—Right of Action—Defense. In an action for divorce the plaintiff made a contract with three lawyers that she would pay them as fee an amount equal to 33 1-3 per cent. of the value of all property that might be awarded her by the court as alimony, or by settlement. She secured a divorce and a settlement of property of the probable value of $100,000, and paid the fees to one firm of the attorneys, as she had agreed to do in the contract. Held, that an action may be maintained by the other attorney against his associates for an accounting in the form of an action for money had and received, and that such action is not based upon the contract with the client, but upon an implied contract with the attorneys collecting the fees to account to him for his part. And held, further, that it is no defense to such action to say that the contract under which the fees were collected was contrary to public policy and void.

3. ATTORNEY AND CLIENT—Money Received—Defense. An attorney admitted to practice in the United States court for the Indian Territory prior to statehood was eligible to be admitted to the roll of attorneys of this court, and, although he had not been so enrolled at the time of entering into a fee contract with a client, his associate counsel who collected the fee cannot defend an action against him for an accounting on the ground that such attorney had not been duly enrolled as an attorney of this court.

(Syllabus by Galbraith, C.)

*Error from District Court, Tulsa County;*
*L. M. ·Poe, Judge.*

Action by Richard Shaha against D. M. Martindale and others, partners as Deichman & Martindale. Judgment for plaintiff, and defendants bring error. Affirmed.

*John Y. Murry, ·Jr.,* for plaintiffs in error.

*R. Shaha,· per se,* and *Biddison & Campbell,* for defendant in error.

Opinion by GALBRAITH, C. This action was commenced by the defendant in error against the plaintiffs in error to recover the sum of $5,000 claimed to be due as his part of a fee in a divorce suit collected and appropriated by them. There was a trial to the court and a jury, and a verdict returned for the plaintiff in the sum of $3,774. From the judgment entered upon this verdict, an appeal has been prosecuted to this court.

It is first complained that the court erred in overruling a demurrer to the petition, on the ground that the same did not state facts sufficient to constitute a cause of action. The body of the petition is as follows:

"Comes one Richard Shaha, the above-named plaintiff, and for his cause of action alleges: That the plaintiff was at all times hereinafter mentioned, and is at present, duly licensed and authorized to practice law in the courts of Oklahoma, and especially the district court of Creek county, State of Oklahoma, and was and is engaged in so practicing law at the present time. That, at all the times hereinafter mentioned, the defendants, Peter Deichman and D. M. Martindale, were engaged in the practice of law in the courts of Oklahoma as copartners under the firm name and style of Deichman & Martindale. That on or about the 15th day of June, 1908, the plaintiff was retained and employed by one Rosa C. Vowell to

bring suit for her in the district court of Creek county, State of Oklahoma, for divorce and alimony against her husband, Sam Vowell. That on the 15th day of June, 1908, this plaintiff, in pursuance of said employment, did file a suit for the said Rosa Vowell against the said Sam Vowell, in the district court of Creek county, State of Oklahoma, for divorce and alimony, and secured an injunction against said Sam Vowell, enjoining him from disposing or incumbering any of his property during the pendency of the said suit. That the said Sam Vowell at the time was the owner of 160 acres of land in the Glenn Pool oil field, on which there were 23 producing oil wells. That he was a citizen of the Creek Nation of Indians of one-sixteenth blood, and there was due him as royalty on said lands, in the hands of the United States Indian agent at Muskogee, Okla., the sum of $7,693.11, and that, before the termination of said suit, oil to the extent of 12,500 barrels had been accumulated as royalty to the said Sam Vowell, and has been stored in tanks on said lease for his benefit.

"Plaintiff further states that, after he had filed suit and secured said injunction for the said Rosa Vowell, the defendants induced the said Rosa Vowell to also employ them in the case with this plaintiff, and the same Rosa Vowell agreed to pay this plaintiff and the defendants, Deichman & Martindale, for their services in said cause, a sum of money equal to one-third of the value of the money and property that she should receive as alimony, in addition to such attorney's fee as might be allowed by the court against Sam Vowell for Rosa Vowell's attorneys.

"Plaintiff further states: That the said cause was tried on the 13th day of November, 1908, and that both this plaintiff and the defendant D. M. Martindale appeared in said cause for said Rosa Vowell, and that the said Rosa Vowell was granted a decree of divorce and also granted alimony in pursuance to a stipulation between her and the said Sam Vowell previously entered into, as follows: The N. ½ of the S. W. ¼ of section 16, township 17 N., range 12 E. Creek county, Oklahoma, consist-

ing of 80 acres more or less, and also a one-half interest in all oil in storage belonging to the said Sam Vowell, which oil amounted to 12,500 barrels as hereinbefore stated, and also a one-half interest in and to all sums due Sam Vowell, as royalty, and held by the United States Indian agent at Muskogee, Okla., which sum amounted to $7,693.11. That before the trial of said cause, to wit, on the 14th day of July, 1908, said stipulation providing for such alimony was filed in said cause, and said Sam Vowell conveyed said 80 acres of land to Rosa Vowell by a warranty deed, and also conveyed to said Rosa Vowell a one-half interest in the said royalty, both money and royalty above described. That after the filing of said stipulation, and after said conveyances had been made, the said Rosa Vowell, in payment of the said attorney's fees, promised to be paid plaintiff and defendant, conveyed to the defendants, Deichman & Martindale, an undivided one-third interest in said 80 acres of land, and also a one-third interest in said royalties. That, at the time said Rosa Vowell so conveyed a one-third interest in said royalties to said Deichman & Martindale, said 80 acres of land was worth $75,000, and that the said 12,500 barrels of oil were worth 41 cents per barrel, and a total sum of $6,250, and a one-half interest therein worth the sum of $3,125, and the one-third interest of plaintiff and defendants $1,041 and the one-half interest of Rosa Vowell in and to the money in the hand of the United States Indian agent, amounted to $3,846.55, and that the one-third interest of plaintiff and defendants was $1,282.20. That the said defendants, Deichman & Martindale, sold said land to James Egan, but this plaintiff does not know and cannot state the amount received by them from the said James Egan, but said interest in said land was worth $25,000, and this plaintiff believes, and therefore alleges, that said defendants received therefor the sum of $25,000; and that they sold the interests of this plaintiff and defendants in and to the said 12,500 barrels of oil, but plaintiff is unable to state how much was re-

ceived for the same, but believes, and therefore alleges, that they received $1,041 for the oil. That the defendants, Deichman & Martindale, received one-third of Rosa Vowell's one-half of the said sum of $7,693.11, in the hands of the Indian agent, amounting to $1,282.20.

"Plaintiff further states that, in addition to the said sum of $7,693.11, royalties in the hands of the United States Indian agent, belonging to Sam Vowell as above alleged, there were other large sums of money in the hands of said Indian agent belonging to Sam Vowell, the amount of which is unknown to this plaintiff, but he believes, and therefore alleges, that it was $10 000 and of which amount the said Rosa Vowell received one-half, and the said Deichman & Martindale received one-third of Rosa Vowell's interest for this plaintiff and themselves, but the amount of which was so received this plaintiff is unable to state, but alleges that the defendants have full and complete knowledge thereof.

"Plaintiff further states: That Deichman & Martindale have received said moneys, to the amount of $27,333 as attorney's fees for themselves and this plaintiff, in addition to other sums unknown to this plaintiff. That this plaintiff was entitled to a one-half interest in all of said sums of money and said property, and that, when they were received by the said Deichman & Martindale, they received said one-half interest and held the same in trust for this plaintiff.

"Plaintiff further states that, in addition to said sums of money and property paid as alimony, the court at the trial of said cause allowed said Rosa Vowell an attorney's fee of $500, and ordered that the said Sam Vowell pay the same; that the said Sam Vowell did pay, same, and that this plaintiff received same, but that he has received no further compensation or interest in said attorney's fees; and that there is now due from defendants to plaintiff, on account of said attorney's fee, the sum of $12,500 of which amount plaintiff claims $5,000, hereby relinquishing his claim to all amounts over $5,000.

"Wherefore plaintiff prays judgment against the defendants, Peter Deichman and D. M. Martindale, and against said partnership for the sum of $5,000, and interest thereon from the 15th day of July, 1908, until paid, at the rate of six per cent. per annum, and for the costs of this action. Plaintiff further prays that a writ of garnishment be issued requiring said James Egan to answer what goods, chattels, rights, credits, or effects he has in his hands, possession, custody, or control, belonging to the defendants, Peter Deichman and D. M. Martindale, or either of them, or how much, if any, he is indebted to the defendants or either of them."

It is probably sufficient to say, in answer to this assignment, that this petition seems to contain all of the necessary elements of a cause of action, and was good as against a general demurrer. The burden of the argument against the sufficiency of the petition seems to be directed to that portion of it setting out the making of the contract for the payment of the attorney's fee beween Rosa Vowell and Shaha and Deichman & Martindale, urging that it does not charge whether this contract was oral or in writing, and the plaintiff below was permitted to prove and recover upon a contract in writing. This fault in the pleading might have been vulnerable to a motion to make more definite and certain, but was invulnerable to a general demurrer.

It appears from the record that the defendant in error, who was then residing in Kiefer, Creek county, Okla., was employed by Rosa Vowell to secure a divorce from her husband, Sam Vowell; that Sam Vowell was a Creek Indian, and owned an allotment of 160 acres located in the Glenn Pool oil field; that this allotment was of great value, having on it, at the time, some 23 producing wells; that Shaha, as attorney for Mrs. Vowell, filed the

petition for divorce in the district court of Creek county
on June 15, 1908, and, in addition to the prayer for a
decree of divorce, alimony was asked, and a restraining
order against the defendant restraining him from dispos-
ing of his land or the royalties from oil taken therefrom
pending the hearing of the suit; that on the 26th day of
June thereafter Mr. Martindale, of the firm of Deichman
& Martindale, attorneys at law located at Tulsa, appeared
at Sapulpa as counsel for Mrs. Vowell, at the hearing of
the application for a restraining order; that this was
the first time that Shaha knew that Deichman & Martin-
dale were associated with him as counsel for Mrs. Vowell;
that he protested against their coming into the case, but
finally consented that they might do so, and it is con-
tended by Shaha that, on that day Mrs. Vowell entered
into a contract with himself and Deichman & Martindale
to pay them an attorneys' fee of an amount equal to
33 1/3 per cent. of the value of any and all property that
might be secured for her; either by decree of court or by
settlement. At the hearing the court allowed a restrain-
ing order, and afterwards Deichman & Martindale acting
for Mrs. Vowell made a settlement of the property rights
of the parties by stipulation, without the consent or
knowledge of Shaha. Under this settlement, Mrs. Vowell
received a deed for 80 acres of the 160 acres in the Glenn
Pool oil field, and one-half of the amount of the royalties
in the hands of the Indian agent at Muskogee, amounting
to something over $6,000, and one-half of the oil stored
in tanks, amounting to about 20,000 barrels. Deichman
& Martindale collected one-third of all the moneys received
on behalf of Mrs. Vowell, and she conveyed to them one-
third interest in the 80 acres of land that she obtained.
Mrs. Vowell made settlement with Deichman & Martin-

dale, according to the terms of her contract, and was apparently satisfied, although the exact amount paid as attorney's fee is indefinite and uncertain. The evidence is, on this point, very unsatisfactory; but Deichman & Martindale failed to account to Shaha for any part of the fee, contending that all of this fee was coming to them and was paid under an independent contract entered into between them and Mrs. Vowell. The decree of divorce was entered on November, 1908, and the settlement of the property as made prior to that time was ratified by the court and an attorney's fee of $500 allowed the plaintiff's attorney. It is agreed that this amount was paid to Shaha.

The plaintiffs in error tried the cause upon the theory that Shaha's name did not appear in the contract wherein Mrs. Vowell agreed to pay one-third of the value of the property she should receive, as attorney fee, and that this was a separate and independent contract with Deichman & Martindale, and Shaha had no interest in the fees collected therein. The evidence, however, tended strongly to sustain the contention of Shaha that this contract was made with him and Deichman & Martindale, and the jury evidently found that to be true, since the court specially submitted that issue in one of its instructions to the jury, and told the jury that unless they found from the evidence that the contract was made with Shaha and Martindale & Deichman he could not recover in this action However, the plaintiffs in error seem to have changed the theory of their defense in this court, and it is earnestly urged here that the judgment cannot stand for the reason that the contract with Mrs. Vowell for the attorney's fee was against public policy and void, and that, since Shaha was a party to this void contract, he cannot

maintain an action in court to enforce his rights growing out of it. A long line of authorities is cited, and much reliance is placed upon the case of *Citizens' National Bank of Chickasha v. Mitchell*, 24 Okla. 488, 103 Pac. 720, 20 Ann. Cas. 371, to support this contention. None of these authorities, however, are controlling in the case at bar, for the reason that those cases deal with void contracts. The argument advanced by the plaintiffs in error proceeds upon a false major premise, namely, it assumes that Mrs. Vowell's contract for the payment of attorney's fee in the divorce suit was void. This is not true. Mrs. Vowell was competent to enter into a contract with an attorney to pay an attorney's fee for services rendered in securing her a divorce. She had the right to institute suit for divorce in the courts of the state, and it seems that she had a good cause of action, since she obtained a decree of divorce in the action. This contract seems to have embraced all of the elements of a legal contract; that is, it was made by parties competent to contract, and was about a legal subject of contract, and was entered into upon sufficient consideration. In fact, Mrs. Vowell has raised no question about the contract. It is conceded that she has fully performed it on her part. The only relevancy that that contract has to this action is as to whether or not it was made with Shaha as well as Deichman & Martindale. If it was, and the jury so found in this case, then the law implies a contract between Shaha and Deichman & Martindale that they will account to him for his part of the fee under the contract. In other words, the law will compel Deichman & Martindale to deal fairly with their associate counsel, whether they wish to do so or not. Deichman & Martindale have shown no disposition to make restitution or to restore to Mrs.

Vowell any part of the large fees which they collected under what they claim to be a void contract, and, while retaining this money illegally taken from her, they say that they cannot be compelled to share it with Shaha. We cannot look with favor on a defense of this character. We cannot find that it has support in the law. Even if the contract under which these fees were collected was void, it having been performed and the money accumulated under it, Deichman & Martindale cannot defend this action on that ground. In *Barnes et al. v. Lynch et al.*, 9 Okla. 193, 59 Pac. 995, it is said, in answer to such an attempted defense:

"The rule sought to be applied here has no application. While the contract with Stiles was illegal, it was carried out and effectuated, and the title to the property taken by Barnes and Dalton was, beyond dispute, taken by them for the company upon consideration paid by it and its members, and it is not necessary for the company to invoke the aid of the illegal contract referred to, for the purpose of recovering or asserting their rights here.

"It was said by the Supreme Court of the United States, in *Planters' Bank v. Union Bank*, 16 Wall. 483 [21 Law Ed. 473], that: 'But when the illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been actually received and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiff, the case is different. The court is not there asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them.'

"It was said in *Cook v. Sherman* (C. C.), 20 Fed. 167, that: 'Where several persons enter into an illegal

contract for their own benefit, and the illegal transaction has been consummated and the proceeds of the enterprise have been actually received and carried to the credit of one of such parties, so that he can maintain an action therefor, without requiring the aid of the illegal transaction to establish his case, he may be entitled to relief.' And that: 'According to this rule, the question in such cases must always be: Can the plaintiff maintain his action without enforcing the illegal contract, or, in other words, has he a cause of action independently of the illegal contract? If it appears that the defendants in a given case have received money or property from the complainants, and which belongs to the latter, the same may be recovered without any inquiry into the nature of the contract under which such money or property was acquired. The distinction is between enforcing an illegal contract and asserting title to money and property which has arisen from it.' "

Again, it is contended that the judgment cannot be sustained because Shaha at the time of making the contract with Mrs. Vowell had not been enrolled as a member of the bar of the Supreme Court, although it is conceded that he had been admitted to practice in the United States District Court for the Indian Territory, prior to statehood, and was engaged in the practice of law in the local courts of Creek county at the time, and did bring the divorce action in the district court of Creek county for Mrs. Vowell, and was associated with Deichman & Martindale in the prosecution of this suit.

Under the Schedule of the Constitution, Shaha was eligible to be admitted to the roll of attorneys in this court, and the fact that he had not been actually admitted might have been a good defense if set up by a client in a suit instituted to recover a fee for services rendered as an attorney, but Deichman & Martindale are estopped to

make this defense in this action. They cannot be heard to urge this objection to an accounting to Shaha for his part of the fee which they gathered in in his lawsuit, and in which they were associated with him as counsel. This divorce suit was Shaha's case. He was first employed and had actually filed the suit when Deichman & Martindale came into the case without his invitation and really over his protest. After trailing into Shaha's case, they proceeded to appropriate the major part of the fees, which are variously estimated in amount from $6,000 to $30,000, and in a divorce case that was not seriously contested in court, then, when Shaha asks that they account to him for his part of the spoils gathered in as fees, it comes with extremely bad grace for them to say that they cannot be compelled to divide with Shaha because he had not been enrolled as a member of the bar of the Supreme Court. The law will not permit them to make such a defense. Another reason why this defense is not good is that the right to maintain this action does not depend upon Shaha being an attorney at law duly enrolled; it is an action for money had and received for his benefit, and might be maintained regardless of the fact whether he was an attorney at law or a hod carrier.

A number of other errors are assigned and were urged in the oral argument and briefs, but we are convinced that they are without merit. A careful consideration of the record impels the conviction that the cause was fairly tried, and that a righteous verdict was returned by the jury, and that the judgment appealed from should be affirmed.

By the Court: It is so ordered.