[Civ. No. 17842. Second Dist., Div. One. Mar. 29, 1951.]

JOHN GALICH, Respondent, v. MARTIN BRKICH et al., Appellants.

188

Maurice Rose and Ralph Rosenstock for Appellants.

Stephen Monteleone, Wellborn, Barrett & Rodi and Owen F. Goodman for Respondent.

DORAN, J.—The complaint herein prays for a dissolution and termination of an alleged partnership or joint adventure between the plaintiff Galich and the defendant Martin Brkich. The defendant Martin Construction Company, Inc. holding a contractor's license under which activities were carried on, is alleged to be the *alter ego* of Martin Brkich, its president.

The receivership in question was granted after a partial hearing of the case, and after informal findings of fact to the effect that a partnership or joint adventure existed, that Brkich had breached the fiduciary relation and that the relationship between the parties should be dissolved. Plaintiff's motion for appointment of a receiver was submitted to the trial court on September 12, 1949, and the order for such receivership entered on November 28, 1949. Prior to the receivership there had been an injunction pendente lite and a reference for an accounting.

It is conceded that the relationship between the parties commenced on July 1, 1941 when an oral agreement was entered into "to thereafter conduct a contracting business as co-partners." At that time the Martin Construction Company, Ltd., of which Martin Brkich was president and owner of 99 of the 100 shares of stock, was interested in a pending contract for construction of sewers in Riverside Drive. There is evidence that neither party had much cash; respondent Galich, however, owned valuable property which would serve as a basis for credit. Galich contributed $134 or $200; Brkich's contribution was $150 in tools and $100 in cash. Profits and losses were to be equally shared. Each party was to draw $50 per week as wages.

Either in its original form, or pursuant to additional written agreements as claimed by appellants, the joint adventure continued at least until January 4, 1948. During this period various construction contracts were handled. Both personal and real property were purchased with joint adventure funds, some property being held in the individual names, some in the

corporate name, and some in the names of Galich and the corporation.

Under date of April 28, 1945, Brkich and Galich executed a written agreement which recites that the Martin Construction Co., Inc. has entered into a contract for construction of a sanitary sewer job in connection with a U. S. Navy project known as Homoja Housing Facilities at San Pedro, California. This agreement states that Galich "will advance to the Martin Construction Co., Inc." the sum of $2,000, "to be used for the payment of labor and/or materials and incidentals in direct connection with said contract," which advance was evidenced by a note. "It is further agreed that the Martin Construction Company, Inc. and/or Martin Brkich shall share equally with John Galich any profits derived from this contract and likewise share equally any loss which may be sustained on said contract."

A further written agreement was executed on July 5, 1946, providing for an equal division of profits and losses, and stipulating that "when it becomes necessary both Parties will contribute to the business everything they own." It is also agreed "that all of the machinery, yard, and the office will be divided equally . . . in the event of a dissolution of this agreement."

According to appellant Brkich's testimony, a conversation occurred on January 5, 1948, in which respondent Galich accused Brkich of using "$60,000 out of my money" to buy real estate, demanded half of such sum and stated, "I am through. We just going to finish up the job that we have on Escalon and I don't want any more." The trial court, however, was convinced "that there was no dissolution on January the 5th of 1948." Plaintiff's complaint alleged that the partnership or joint adventure had "realized profits in excess of $150,000.00" which had been wrongfully withdrawn by the appellant Brkich.

The points raised in appellants' brief have been reduced to two general propositions, namely: "(a) The trial court abused its discretion in appointing a receiver and (b) the partnership was illegal and, for that reason, no relief should be granted Respondents." The illegality feature is predicated upon the proposition that "Since no Contractor's license was ever issued to any partnership or joint adventure or which either the Respondent, or the Appellant Martin Brkich, or the corporate Appellant, was a member, it was unlawful under section 7029 of the Business and Professions Code for said individuals or corporation to bid or perform the con-

struction work in question as a partnership or joint adventure either under the name of the corporate Appellant or under any other name.''

Appellants also argue that a receiver should not be appointed ''where ample protection . . . can be insured by an available remedy less drastic and harsh,'' in this case a surety bond offered by the appellants. It is insisted that ''The authority of the Court to appoint a receiver must be found in section 564, subdivision 1 of the Code of Civil Procedure''; that the statute ''makes both the danger to the funds and property and applicant's probable interest therein as conditions precedent,'' and that neither fact was shown to exist.

The respondent's brief denies any abuse of discretion in the appointment of a receiver, and calls attention to the fact that the appointment was not made ex parte but ''only after a trial of four days duration during which a searching examination had been made of Brkich's management,'' and only after it was indicated ''that the injunction and appointment of a referee were not serving the purpose anticipated.''

Although the record discloses a conflict of evidence as to certain phases of the transaction, it is conceded that real and personal property had been purchased with joint adventure funds. That considerable confusion existed in reference to the accounts of the joint enterprise, is evident from the trial court's statement: ''There has been such a complete commingling of the individual funds and the business funds . . . that I don't know how you are going to find out anything without having all the latitude in the world.''

In view of the situation disclosed by the record it cannot be said that there has been a manifest abuse of the trial court's discretion in the appointment of a receiver. Various cases have been cited by appellant in some of which the giving of a surety bond has been deemed adequate security to protect the interests of the complaining party. None of these cases, however, attempt to lay down a rule that, by posting a bond, a defendant may thereby deprive a plaintiff of the right to a receiver. The sound discretion of the trial court must be exercised in the light of all the facts, and the decision rendered should not be interfered with on appeal except upon a clear showing of some abuse of that discretion.

Appellants' brief makes much of the fact that no contractor's license was ever procured by the joint adventure and alleges complete illegality of the contractual relation because of that fact. As hereinbefore indicated the joint ad-

venture had operated under the name and license of the Martin Construction Company, Inc. There is evidence that at the inception of the contract Brkich took Galich to the Contractors' State License Board, and according to Galich, ''Well, we go in—we go into the State building to get a license. I told him 'How we going to work without license?' He (Brkich) say he has got a license, . . . and he going first in the window and talked for that guy. He told me I can't get no license now, 'lets go in the other room as we sign up.' '' It appears that Galich at Brkich's direction then signed an application for renewal of the corporate appellant's license, ''He (Brkich) say, 'I am President, you Vice President.' ''

A somewhat similar situation occurred in *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24], where a partner was permitted to maintain an action for dissolution and accounting notwithstanding the fact that only one of the partners had taken out a license. The court there said that the rule that courts will not lend aid to the enforcement of an illegal agreement should not be ''blindly'' extended ''to every case where illegality appears somewhere in the transaction.'' The court further observed that ''licensing statutes are passed primarily for the protection and safety of the public. They are not passed for the benefit of a greedy partner who seeks to keep for himself all of the fruits of the partnership enterprise to the exclusion of another partner entitled to share therein.''

■ The contract in question was not *per se* contrary to any statute; public welfare and safety were not threatened, and public policy would not be protected or served by denying one partner relief against the other. Appellants' endeavor to distinguish the Norwood case from that here involved is not persuasive, for, while the facts are not identical, the principle announced is clearly applicable to the instant controversy. Other cases cited, such as *Young* v. *Hampton* (1950), *(Cal.App.) 221 P.2d 195, have nothing in common with the facts here involved and do not support appellants' contentions.

Due consideration of the various points raised in appellants' briefs leads but to the conclusion that the same are untenable. The necessity of receivership was a matter within the sound discretion of the trial court and no inter-

---

*A hearing by the Supreme Court was granted on October 9, 1950, and the final decision of that court is reported in 36 Cal.2d 799.

ference with the exercise of such discretion has been made apparent.

The order appealed from is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 16, 1951, and appellants' petition for a hearing by the Supreme Court was denied May 24, 1951. Edmonds, J., and Carter, J., voted for a hearing.