[Civ. No. 20491.   Second Dist., Div. Three.   Mar. 28, 1955.]

V. O. MATCHETT, Appellant, v. JERRY GOULD et al.,
Respondents.

Donovan W. Ballenger and Benjamin P. Riskin for Appellant.

Louis Ballenger for Respondents.

ASHBURN, J. pro ▮▮▮▮▮   This question is determinative of the instant appeal: Did the trial judge correctly

*Assigned by Chairman of Judicial Council.

rule that plaintiff's failure to procure a contractor's license pursuant to Business and Professions Code, sections 7026, 7028, 7029, precludes his recovery for work and materials furnished to another contractor under an agreement with that other contractor, who was also unlicensed?

Plaintiff sues as assignee of Frank B. Gotham who conducted business under the name Crane Service Company (herein referred to as Crane). Defendants Jerry Gould and Henry Matthews operate under the name G. & M Brick Company (later designated herein as G & M). Crane was in "the equipment and demolition equipment rental business" and G & M in the "business of buying and selling salvage brick." The Glendale Unified School District was the owner of two brick buildings which it desired to raze. Bids for demolition and removal of same were invited. The representatives of Crane and G & M conferred together and arrived at an oral agreement that Crane should make a bid of $3,349.99, said sum to be a payment to the school district for all salvage; this amount apparently represented the excess of the estimated value of all salvageable material over the cost of recovering the same and disposing of materials which could not be salvaged. Under their agreement G & M were to furnish the $3,349.99 for payment to the district. The bid was made and accepted, whereupon Crane entered into a written contract with the district and also paid for and posted a public works bond and a faithful performance bond. G & M supplied the $3,349.99 as agreed. Crane thus became the contractor so far as the school district was concerned. But Crane and G & M rearranged the deal between themselves. All salvageable bricks and other materials were to belong to G & M. They hired Crane Service Company cranes "by the hour to take down the brick and load them out on the G & M trucks for transportation to G & M yard." These were "manned and maintained" cranes, for whose services Crane was to be paid by G & M the reasonable value. G & M were to supply their own labor to strip the building of other salvageable materials and haul them away; G & M to own all salvage and "receive the revenue therefrom in its entirety." It was also agreed that Crane would remove and dispose of all concrete and rough grade the site, for which G & M were to pay Crane $5,500. The job was completed. Each of the parties "worked on their respective portions of the job independently, and ... they did not share control." The reasonable value of the

hire of the crane was $817.65 of which Crane received $200 from G & M. Crane also furnished additional labor and services, "which included dumping fees and cost of replaceing personal property removed in the amount of $680.67." Neither Crane nor G & M had a contractor's license to do the work. Defendant G & M refused to pay the balance of $617.65 for crane hire, or any part of the $680.67 or the $5,500, relying upon the fact that Crane had no contractor's license. This position was upheld by the trial court, judgment went for defendants, and hence this appeal.

Plaintiff sued upon the contract, seeking recovery according to its terms. The trial judge found all the facts in his favor as alleged, but denied any recovery. Respondents' brief says: "There is no question that the building in question was demolished and the salvage was carried away . . ."; it also appears that it was sold by G & M. Defendants' counsel argues that section 7037, Business and Professions Code, forbids recovery. This poses a serious question for plaintiff does not proceed in *quantum meruit* nor directly invoke the doctrine of unjust enrichment. His right to recover depends, we think, upon whether defendant was within the class of persons for whose protection the statute was enacted. Sections 7026, 7028 7029 and 7031 are set out in the footnote.[1]

---

[1] "§ 7026. The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submit a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. The term contractor includes subcontractor and specialty contractor."

"§ 7028. It is unlawful for any person to engage in the business or act in the capacity of a contractor within this state without having a license therefor unless such person is particularly exempted from the provisions of this chapter."

"§ 7029. It is unlawful for any two or more licensees, each of whom has been issued a license to engage separately in the business or to act separately in the capacity of a contractor within this State, to jointly submit a bid or otherwise act in the capacity of a contractor within this State without first having secured an additional license for acting in the capacity of such a joint venture or combination in accordance with the provisions of this chapter as provided for an individual, copartnership or corporation."

"§ 7031. No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

Appellant's counsel relies largely upon cases involving the rights of a partner or joint venturer to enforce a disgorgement of a share of profit or other property derived from activities conducted without a requisite license and withheld by another partner or venturer. Referring to such a situation the opinion in *Norwood* v. *Judd,* 93 Cal.App.2d 276, 286 [209 P.2d 24], says: "It must be remembered that these licensing statutes are passed primarily for the protection and safety of the public. They are not passed for the benefit of a greedy partner who seeks to keep for himself all of the fruits of the partnership enterprise to the exclusion of another partner entitled to share therein. Where the illegal transaction has been terminated, public policy is not protected or served by denying one partner relief against the other."

*Fraenkel* v. *Bank of America,* 40 Cal.2d 845, 848 [256 P.2d 569], states the purpose of the legislation more broadly: "That law was enacted for the safety and protection of the public against imposition by persons inexperienced in contracting work, and for the prevention of fraudulent acts by contractors resulting in loss to subcontractors, materialmen, employees, and owners of structures. (*Loving & Evans* v. *Blick,* 33 Cal. 2d 603, 609 [204 P.2d 23]; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628, 632 [204 P.2d 37].)" Moreover, " 'The invasions it makes on constitutional rights are not [to] be carried farther than is necessary to protect the public from the evils intended to be removed, unless the language compels such meaning and such effect is reasonably calculated to secure the legitimate objects for which the power is exercised.' " (*Joseph* v. *Drew,* 36 Cal.2d 575, 581 [225 P.2d 504].) Indeed, the statute is to be strictly construed. (*Oddo* v. *Hedde,* 101 Cal. App.2d 375, 383 [225 P.2d 929].)

Cases which uphold the right of one partner to recover his share of moneys earned in a venture conducted without the required license are: *Denning* v. *Taber,* 70 Cal.App.2d 253, 257 [160 P.2d 900]; *Norwood* v. *Judd,* 93 Cal.App.2d 276, 286 [209 P.2d 24]; *Galich* v. *Brkich,* 103 Cal.App.2d 187, 191 [229 P.2d 89]; *Wold* v. *Luigi Consentino & Sons,* 109 Cal. App.2d 854, 857-858 [241 P.2d 1032]; *Wilson* v. *Stearns,* 123 Cal.App.2d 472, 481 [267 P.2d 59]. (In each of them, except the Wold case, a hearing was denied by the Supreme Court; no application was made in Wold.) The Denning and Norwood cases proceed upon the basis that the illegality has spent its force when the point of dissolution and accounting is reached and that enforcement of a promise, express or im-

plied, to divide the partnership assets does not require the court to lend its aid to enforcing the illegal feature of the partnership. The Galich decision marks a departure from the concept that there must be an express or implied promise to divide. That was an action for dissolution of a partnership or joint venture. In rejecting the claim that the relation between the parties was completely illegal because of absence of a license, the court, at page 191, quoted from the Norwood case and added: "The contract in question was not *per se* contrary to any statute; public welfare and safety were not threatened, and public policy would not be protected or served by denying one partner relief against the other. Appellants' endeavor to distinguish the Norwood case from that here involved is not persuasive, for, while the facts are not identical, the principle announced is clearly applicable to the instant controversy.

*Wold* v. *Luigi Consentino & Sons, supra,* 109 Cal.App.2d 854, dealt with a joint venture whose weakness lay in the fact that, although each individual was licensed, there was no license to act jointly as required by section 7029, Business and Professions Code. At page 857: "Remembering that each of the joint venturers was duly licensed as a contractor and that only the license to act jointly was lacking, that the contract which the joint venturers were to perform was completed and paid for by the owners, that the defendant partnership received into its possession, and still retains, the profits of the venture, and that this is an action, not against the owners for whose protection in the main part the statute requiring the license was enacted, and that because the joint venturers were licensed so as to bring to the performance of the contract the skill, knowledge and responsibility which in main part the licensing statute was enacted to assure to those with whom they dealt, we think that the decision must be controlled by application of the rule laid down in *Galich* v. *Brkich,* 103 Cal.App.2d 187 [229 P.2d 89], which was decided after the trial court's decision in this case."

Respondent argues that these cases are not controlling because no joint venture was alleged or proved at bar. Certainly there was no such allegation or finding; at least not in specific terms. And there is no fund to be divided. But defendants received and disposed of all salvage and kept all profits derived therefrom. They have also had materials and labor worth $6,683.57 furnished by plaintiff for their benefit and for which they refuse to pay. We apprehend

that the presence of a partnership or joint venture in the cases above reviewed is not the determinative feature; it merely affords the basis for application of the equitable concept that one person in possession of property belonging to himself and another cannot deny the claim of that other to his share because the property was acquired in a transaction which was unlawful only because had without the sanction of a licensing statute. In other words, those cases hold that the recalcitrant partner is not one of the public for whose protection the statute was enacted. To some extent those cases are pertinent here. But they do not fully sustain appellant's position, for he stands upon a contract, not upon a right to division of assets after completion of a contract, and it is one which would not be enforceable if the action were brought against the school district. (*Mansfield* v. *Hyde,* 112 Cal.App.2d 133 [245 P.2d 577]; *Grant* v. *Weatherholt,* 123 Cal.App.2d 34 [266 P.2d 185].)

However, *Wilson* v. *Stearns, supra,* 123 Cal.App.2d 472, does support appellant. That case takes a step in advance of the partnership rulings and upholds the right to recover *on the contract* when equity and good conscience so dictate, notwithstanding the absence of a required license. That was an action to recover a real estate broker's commissions upon a written contract with a subdivider. Defendant resisted plaintiff's claim on the ground that he had violated subdivision (f) of section 10176, Business and Professions Code, which is set forth in the margin.[2] The court first held that plaintiff had not been engaged in the proscribed practice (p. 479), then turned to the question of alleged illegality on the part of a violator of that law, and upheld plaintiff's right of recovery though assuming his transgression of the statute. At page 481 it said that "unjust enrichment re-

---

[2] "§ 10176. Investigation of actions of licensees: Grounds for suspension or revocation of licenses. The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this State, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee within the immediately preceding three years, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: . . .

"(f) The practice of claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement authorizing or employing a licensee to sell, buy or exchange real estate for compensation or commission where such agreement does not contain a definite, specified date of final and complete termination."

sults for respondent Stearns if appellant Wilson is barred from recovering commissions on executed sales." At page 480: "In determining whether a contract is invalid the courts should strive to deal with the transaction so as to give effect to the fundamental purpose of the Legislature and to a wise public policy. And, in determining whether a real estate broker may be deprived of the value of his services, already admittedly earned, his contract will not be declared invalid upon the basis of anything not embraced within the terms of the applicable statute." And at page 481: "This court has, on previous occasions, enunciated the doctrine that law and good morals should be one and inseparable. Based on this philosophy it must be assumed that statutes such as the one now engaging our attention are enacted, as heretofore stated, for the protection and safety of the public. They are not adopted for the benefit of a greedy and avaricious participant in a venture or enterprise who seeks to keep for himself the fruits of the enterprise to the exclusion of a real estate broker who has fully performed all of his obligations under the agreement, and is entitled to share therein. Where, as here, the alleged illegal transaction has been terminated, public policy is not served or public policy protected by denying one party to the contract relief against the other. Rather than permit the unjust enrichment of respondent George Stearns, we are disposed to apply the rule announced in the case of *Norwood* v. *Judd,* 93 Cal.App.2d 276, 288 [209 P.2d 24], wherein, as Mr. Presiding Justice Peters, speaking for the court, in a well reasoned and considered opinion, said '. . . The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. *Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.'* " As to Stearns and his *alter ego* Alamo Development Company the judgment was reversed with instructions to enter judgment for plaintiff.

The court relied in part upon *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687 [166 P.2d 265], which does support the Wilson ruling. Plaintiffs there sued for the reasonable value of services rendered in furnishing carpenter labor for the construction of certain houses. Plaintiffs Albert Gatti

and Charles D. Moore were partners or joint venturers and as such did the work under a written contract. Each had an individual contractor's license but they had failed to procure a separate partnership license as required by section 7029, Business and Professions Code. However, a predecessor firm consisting of Albert Gatti, Chas. D. Moore and Delbert Moore had taken out a joint license. Defendant relied upon the absence of a joint license running to the two plaintiffs and upon the terms of section 7031 forbidding an action by unlicensed contractor or contractors. Plaintiffs' judgment was affirmed. At page 690: "A reasonable interpretation of the above code sections, regulating the business of a builder and contractor and enacted 'for the safety and protection of the public' by prohibiting inexperienced persons from engaging in such work, compels the conclusion that plaintiffs have substantially complied with the statutory requirements. Defendant approved of the partnership arrangement for the completion of the work, and makes no contention that the labor performed was in any way unsatisfactory or that the monetary demand was excessive. The inequity of defendant's position stands out markedly when we consider that defendant would have plaintiffs—who are licensed individually and are also licensed as copartners with a third person, and who have satisfactorily performed work of the reasonable value of $3,435.50—go out of court with nothing, on the ground that they did not have a separate partnership license issued to them in consequence of the modified arrangement made with defendant for completion of the work under the admittedly valid contract originally made with Gatti individually. If defendant is allowed to defeat plaintiffs' legitimate claim on this technical ground, resting on an unnecessarily strict construction of the statutory provision for the *additional* joint contractor's license and denying any effect to the combination license in fact issued to plaintiffs and a third person as above recited, the legislative scheme in relation to the licensing of contractors, intended 'for the safety and protection of the public,' would become an unwarranted shield for the avoidance of a just obligation." Broad equity thus sustained a recovery which was in the teeth of the exact terms of section 7029. The case was factually distinguished in *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 608 [204 P.2d 23], but the Supreme Court has never departed from the basic ruling. And it does support the proposition that recovery can be had upon the

contract in the absence of a license when equity and good conscience dictate such relief as an alternative to a judgment which would convert a law intended "for the safety and protection of the public" into "an unwarranted shield for the avoidance of a just obligation" (quoting page 690 of 27 Cal.2d).

As above indicated, the exact legal status of the arrangement between the parties is not a determinant in these situations; it is not necessary that there be a partnership or joint venture or any other specifically named relationship. The necessity of doing justice through forestalling unjust enrichment is the controlling consideration.

While this is true, another approach to the problem is equally satisfying in its result. The parties in effect assigned the school district contract to G & M and made Crane a subcontractor; the subcontractor has done his job and defendant refuses to pay. While there was no formal assignment, defendant put up the money and took over the ultimate benefit of the contract—the ownership and disposition of the salvageable material. While Crane remained liable to the city upon his contract and the posted bonds, he ceased to have any control over the operation except to work for G & M in the salvaging of brick, removing concrete, rough grading the site, etc. This he did independently, "and they did not share control." All the profits went to G & M; Crane was entitled to nothing except the agreed price for labor and materials furnished by him. ■ That this arrangement constituted an assignment so far as they were concerned is indicated by the holding in *Bergin* v. *van der Steen*, 107 Cal.App.2d 8, 16 [236 P.2d 613], for "it is the substance and not the form of a transaction which determines whether an assignment was intended." ■ The contractor's licensing statute is designed *inter alia* "for the prevention of fraudulent acts by contractors resulting in loss to *subcontractors*, materialmen, employees, and owners of structures." (*Fraenkel* v. *Bank of America*, *supra*, 40 Cal.2d 845 at 848; emphasis added.) ■ When a subcontractor is placed in the class of those for whose protection the law was enacted, he is removed from the imputation of *pari delicto* (*Hedlund* v. *Sutter Med. Serv. Co.*, 51 Cal.App.2d 327, 333 [124 P.2d 878]; *Robertson* v. *Hyde*, 58 Cal.App.2d 667, 672 [137 P.2d 703]; 12 Cal.Jur.2d, § 103, p. 302), and thus enabled to maintain an action for recovery of what is justly due him.

*Dow* v. *United States* (10 C.A.), 154 F.2d 707, so holds. The action was brought by the United States for the use of Ben J. Holley to recover from L. F. Dow Trading Company et al., a balance due on a subcontract, Dow being the prime contractor. The matter was governed by the law of Utah. Holley did not have the license required by statute, and the general contractor sought to defeat recovery on that ground. At page 710 the court disposed of the contention in this manner: ". . . it is the well settled general rule that in ordinary circumstances, a contract entered into by an unlicensed person in contravention of the statutory provisions of this kind will not be enforced. . . . But that general rule does not have application in a case of this kind in which an unlicensed member of a profession or trade seeks to recover from a licensed member for services rendered or labor performed pursuant to a contract entered into by them. *Martindale* v. *Shaha*, 51 Okla. 670 [151 P. 1019]; *White* v. *Little*, 131 Okla. 132 [268 P. 221]; *Ferris* v. *Snively*, 172 Wash. 167 [19 P.2d 942, 90 A.L.R. 278]; *Cf. John E. Rosasco Creameries* v. *Cohen*, 276 N.Y. 274 [11 N.E.2d 908, 118 A.L.R. 641]. Moreover, here the primary contract obligated Dow to construct the buildings, including the excavating for the footings. He could do all of the work himself or let some of it to subcontractors. The subcontract let to Holley was illegal, but he has completed the work under it. The prime contract also has been completed, and Dow has received from the United States payment in full for the buildings, including the amount attributable under such contract to the excavating for the footings. Both contracts having been completed and Dow having received payment in full, it would not further the letter or the spirit of the law to allow him to escape liability for the unpaid balance due Holley by asserting the illegality of the subcontract. *Cf. Brooks* v. *Martin*, 2 Wall. (U.S.) 70 [17 L.Ed. 732]; *Overholt* v. *Burbridge*, 28 Utah 408 [79 P. 561]." See also *Ferris* v. *Snively*, 172 Wash. 167 [19 P.2d 942, 90 A.L.R. 278] which involves a matter of splitting attorney fees with an unlicensed lawyer. It holds that the claim can be enforced against the employing lawyer after completion of the services, but not against his estate as the heirs and personal representative have the status of third parties for whose protection the licensing law was passed.

The trial court did not decide and it is not necessary for us to determine the exact relationship which the parties bore

toward each other. We need go no further than to hold that one of two unlicensed contractors who has completed his job and conferred value upon the other may recover the amount due him for the same. The statute from the time of completion operates for his protection and does not defeat the enforcement of his just claim. We are constrained to hold that the judgment herein is erroneous.

The judgment is reversed with instructions to render judgment for plaintiff as prayed.

Wood (Parker), J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 25, 1955. Spence, J., was of the opinion that the petition should be granted.