### BELLEW et al. v. JACOBS. (No. 8022.)

(Court of Civil Appeals of Texas. Galveston. March 9, 1921. Rehearing Denied March 31, 1921.)

1. **Account stated ⬞8—Account stated including items from illegal sale of liquor held conclusive.**

Where defendant, treasurer of a lodge, agreed that each member of the association, after its dissolution, should share equally in the distribution of the funds in his possession, a suit therefor was on a stated account, and plaintiff was entitled to recover regardless of whether some portion of the fund was obtained by the association's unlawful sale of liquor, and evidence thereof was inadmissible.

2. **Partnership ⬞26—Agreement to share profits or losses cannot be impeached because accruing in illegal business.**

A contract to pay either profits or losses incurred in an illegal enterprise cannot be impeached by showing that the partnership enterprise in which such profits or losses accrued was illegal.

3. **Account stated ⬞20(1)—Evidence held not conflicting on the issue as to there having been an accounting and agreement thereon between plaintiff and defendant.**

In an action by a member of an association against its treasurer, after dissolution, evidence *held* not conflicting as to accounting between defendant and the other members so that directing a verdict for plaintiff was not error.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by George M. Jacobs against P. J. Bellew and another. Dismissed as to the defendant T. B. Lucas. Directed verdict and judgment for plaintiff, and the defendant Bellew appeals. Affirmed.

Daniel J. Wilson, of Galveston, for appellant.

John T. Wheeler and Frank S. Anderson, both of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant individually and as treasurer of Galveston Nest, No. 1726, Order of Owls, an unincorporated fraternal association, to recover the sum of $1,200.

It is alleged in the petition that the association had dissolved, and that defendant had in his hands, as treasurer of the association, the sum of $1,200, which belonged to plaintiff and the other members of the association, all of whom, except the defendant, had assigned their claim to plaintiff. The petition alleges:

"That prior to the 30th day of June, 1918, said Galveston Nest, No. 1726, Order of Owls, was disbanded and ceased to exist as an association, and at the time of its disbandment, and for sometime prior thereto, the defendant P. J. Bellew was the treasurer of said Galveston Nest, No. 1726, Order of Owls, and as such treasurer, and in his individual capacity, there came into his possession and under his control a sum of money derived from the payment of dues by the membership and from the sale of refreshments to members, a sum of money exceeding $1,700; that after the disbandment of said Galveston Nest, No. 1726, Order of Owls, the plaintiff and said other members aforesaid had an accounting with the defendant P. J. Bellew as to the amount of money in his hands as aforesaid, subject to distribution among the members, including the plaintiff and said persons above mentioned, and that upon said accounting there was found to be due and owing the membership, after the payment of all debts and liabilities, the sum of $1,700, which, at the time of his accounting, the said defendant promised and agreed to distribute pro rata among the said memberships, and that thereupon said amount became and was stated to be the sum of $1,700; that after said accounting was had the defendant P. J. Bellew, in pursuance to said agreement, distributed pro rata to the plaintiff and other members aforesaid, the sum of $500, leaving a balance in the hands of said defendant P. J. Bellew of about the sum of $1,200, subject to be distributed aforesaid; that the persons set forth in the first paragraph or subdivision of this amended petition have, by an instrument or instruments in writing, duly assigned all of their right, title, and interest in and to said sum of $1,200 in the hands of the defendant as aforesaid, and that the plaintiff is now the owner and holder of the shares mentioned and set forth in said assignment, and has good right to maintain this suit for the recovery thereof; that the plaintiff and said persons mentioned in the first paragraph or subdivision of this amended petition have frequently demanded payment from said defendant of the amount stated and found to be due as hereinbefore alleged, but that the said defendant has failed and refused, and still fails and refuses to pay the same or any part thereof; and, that there is now due and owing the plaintiff by the defendant, by reason of the facts aforesaid, the sum of $1,200 and interest thereon from the 30th day of June, 1918, no part of which has been paid."

In addition to a general demurrer and general denial, the answer of the defendant contains the following averments:

"And without waiving any of the foregoing, but insisting upon all of the same for special answer herein, if special answer be necessary, these defendants say that on or about the 27th day of April, A. D. 1918, and at the time of the dissolution of Galveston Nest, No. 1726, Order of Owls, they were the treasurer and secretary respectively of said Nest; that on or about the 27th day of April, A. D. 1918, and in accordance with a resolution passed at that time by said Galveston Nest, No. 1726, Order of Owls, divided the funds remaining on hand and legally belonging to said Nest, and paid to each of the plaintiffs in this cause, and others entitled, the sum of $25, and took a receipt therefor; that said money so paid out, together with several other small items of expense duly authorized, and which said items of expense were duly paid, constituted the sole and only funds which rightfully belonged to said Galveston Nest, No. 1726, Order of Owls, and which rightfully came into defendant Bellew's possession as treasurer of said Nest; that at the time of the institution of this suit, and now, neither of said defendants is in possession of any funds which rightfully came into their possession as treasurer and secretary respectively of said Galveston Nest, No. 1726, Order of Owls; that all funds which so came into the possession of either of said defendants has been paid out, and at the time of the institution of this suit, was paid out, either to the Home Nest of the Order of Owls or as hereinbefore set forth.

"And for further special answer herein, if further special answer be necessary, the defendants P. J. Bellew and T. P. Lucas say that, if any or either of them is in possession of any such sum of money as alleged in plaintiff's petition, which is not admitted, but denied, that said money is the result and came into their possession as the result of the illegal sale by said Galveston Nest, No. 1726, Order of Owls, of intoxicating beverages, malt, spirituous and vinous; that said sales so made by said Galveston Nest, No. 1726, Order of Owls, were made by agreement of the members of said Nest, and were either duly authorized or acquiesced in by the members of said Nest, and said sales so made were in direct violation of the laws of this state; that the plaintiffs and defendants in this cause of action, and each of them, as members of said Galveston Nest, No. 1726, Order of Owls, were parties to said illegal sales and to the violation of the liquor laws of this state, and that the money which plaintiffs herein are seeking to recover is the money so illegally and unlawfully obtained; that because of the illegal and unlawful agreement and the carrying out of the same by the parties to this cause to so violate, and the violation of the laws of this state as hereinbefore set forth, plaintiffs, and neither of them are entitled to recover."

The defendant Lucas, who joins in the above answer, and who was secretary of the association, was dismissed from the suit by the amended petition upon which the cause was tried.

After hearing the evidence, the trial court

229 S.W.—59

instructed the jury to return a verdict for plaintiff for the sum of $851.04, and upon return of such verdict judgment was rendered in accordance therewith.

On the trial, the defendant, in support of his plea that the money demanded by plaintiff was obtained from the illegal sale of liquor offered the following testimony:

The witness James A. Cameron, while on the witness stand was permitted to testify, without objection, that he was a member of Galveston Nest, No. 1726, Order of Owls, and that he went to the hall of the said Nest. He was then asked this question:

"Did you ever purchase a drink or drinks of either spirituous, vinous or malt liquors or liquors of an intoxicating nature?"

Objection was made, sustained and exception noted, it being agreed:

"That this witness, if allowed to testify, would testify that, although not a member of the club, he on one or more occasions bought liquor at the bar of the club and paid for it."

P. J. Bellew, defendant herein, stated that he knew the origin of the funds coming into his possession, as treasurer and individually, and was asked to "state" the origin. Objection was made, sustained and exception noted, the exception being based upon the fact that "the petition expressly alleges the sale of refreshments to members"; the stated purpose of the question being "of showing that the funds came from other than members."

George Jacobs, plaintiff, on cross-examination, after testifying that beer, wine, and cigars were sold by Galveston Nest, No. 1726, Order of Owls, and after stating that he did not remember whether or not the Nest had a liquor license, was asked "Did you ever see them sell to any but members?" Answered: "Never seen outsiders up there the whole time I belonged to the order, outside of a social."

[1] The first assignments of error presented in appellant's brief complain of the ruling of the court sustaining plaintiff's objection to the testimony above set out. These assignments cannot be sustained.

The defendant being in possession of the fund of the association as its treasurer, and having agreed as alleged in plaintiff's petition that each member of the association after its dissolution was entitled to share equally in the distribution of such fund, the amount of the fund being also agreed upon, plaintiff's suit was upon a stated account, and he was entitled to recover regardless of whether some portion of the fund may have been obtained by the illegal sale of liquor by the association.

Plaintiff's cause of action is not based upon an illegal contract, nor does his right of recovery arise from any illegal transaction. In the case of De Leon v. Trevino, 49

Tex. 88, 30·Am. Rep. 101, in which the plain-tiff sued the defendant upon a note given in settlement of the plaintiff's share of the profits of a smuggling business conducted by him and the defendant, our Supreme Court, in answer to the contention that the plaintiff could not recover because of the illegality of the transaction by which the money was obtained by the plaintiff and defendant, says:

"This action is not founded upon the alleged illegal contract, nor was it brought to enforce any of its stipulations or conditions. The illegal enterprise, if it was illegal, in which De Leon and appellees were engaged, and all the matters connected with it, were voluntarily settled and adjusted by them. True, the notes upon which the suit is brought were given by De Leon in such settlement. But if a contract is illegal, certainly it does not follow that it is illegal or immoral for the parties, after its completion, to fairly settle and adjust the profits and losses which have resulted from it. The vice in the contract does not enter into the settlement so that all contracts and undertakings based upon, or growing out of, the settlement, confer no rights which the courts will respect or enforce. By her answer, appellant sought to be relieved against an executed contract, upon the ground that her intestate had been engaged with appellees in an illegal enterprise. But she is not entitled to relief upon such ground. If the notes sued upon had been given to carry on the illegal enterprise, instead of in settlement of it, the taint of the contract would have attached to the notes, and appellees could not maintain an action upon them. But the answer merely shows that, by reason of the illegal character of the enterprise in which the parties had been engaged; appellant's intestate could not have been forced to an accounting with appellees, or to pay or give his notes for the amount found to be due from him to appellees on such accounting. This, however, is no reason why an action may not be maintained on notes given for the amount found to be due on a voluntary settlement of the illegal partnership enterprise. And it has often been, in effect, so held in this as well as other courts."

[2] A number of cases are cited by the learned judge who wrote the opinion above quoted in support of the conclusions of the court which are summed up in the final statement, that a contract to pay either profits or losses incurred in an illegal enterprise cannot be impeached by showing that the partnership enterprise in which such profits or losses occurred was illegal. This case has been reaffirmed and followed by later decisions of our courts. Pfeuffer v. Maltby, 54 Tex. 454, 38 Am. Rep. 631; Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154; Mitchell v. Fish, 97 Ark. 444, 134 S. W. 940, 36 L. R. A. (N. S.) 838.

[3] The remaining assignments of error complain of the action of the court in instructing the jury to find for the plaintiff on the ground that the evidence was conflicting on the issue of whether there had been an accounting between the defendant and the other members of the dissolved association and the defendant had agreed to pay them the money in his possession as treasurer of the association.

After a careful inspection of the record we fail to find any conflict in the evidence upon this issue. There is some uncertainty in the evidence as to the exact date of the accounting, but this is an immaterial matter. The defendant does not deny that he had the sum of money claimed by plaintiff at the time the association dissolved or was abandoned by mutual consent, nor does he deny the circumstantial statement of the plaintiff's evidence that he agreed on the amount due each member and offered to pay same by a check due two years after date, stating that he could not pay the money in cash because he had been advised by his attorney not to pay it until the expiration of two years, his only denial being that such accounting occurred after April 27th or on June 30th, the day on which the association was dissolved. As before stated the exact date of the accounting is immaterial. That it was had in contemplation of the dissolution of the association, and that the defendant agreed to pay the amount claimed by the plaintiff which he then had, and still has, in his possession as treasurer of the association, is shown by the undisputed evidence.

We are of opinion that the judgment of the trial court is correct, and should be affirmed, and it has been so ordered.

Affirmed.