[Civ. No. 7151.   Third Dist.   July 23, 1945.]

DAN DENNING, Respondent, v. ROY TABER, Appellant.

George A. Tebbe and Glenn D. Newton for Appellant.

J. Everett Barr, Daniel J. Carlton and Carlton & Shadwell for Respondent.

THOMPSON, J.—The defendant has appealed from an interlocutory judgment which was rendered against him in a suit for an accounting of partnership property in his possession belonging to the plaintiff. The court determined that the plaintiff and defendant had been associated as equal partners in the conducting of a saloon business at Yreka from and after October 6, 1942. The partnership was terminated and the business closed by mutual agreement on February 1, 1944, and the defendant then agreed to divide equally the assets of the business in his hands. The answer merely denied

the existence of the partnership, but at the trial the defendant invoked the rule that courts will not determine controversies between partners founded upon the illegal conduct of a business contrary to law. It appeared that plaintiff had not secured an individual liquor license as a member of the partnership as required by the Alcoholic Beverage Control Act. (Stats. 1935, p. 1123, and amendments thereto; 2 Deering's Gen. Laws, p. 1353, Act 3796.) A motion to dismiss the action on that account was denied.

On appeal the defendant does not contend that the evidence fails to support the court's finding that the partnership existed. The sole question is whether the court erred in assuming that, since the partnership was terminated and defendant had agreed to divide the assets of the business equally, it was not precluded on the ground of public policy from entertaining this action for an accounting of the proceeds of a saloon business which was conducted by a partnership, without requiring each partner to secure a liquor license.

While there is a conflict of evidence regarding the partnership business, there is very convincing testimony that the plaintiff and defendant agreed to and did purchase and operate the saloon business at Yreka as equal partners from October 6, 1942, to February 1, 1944, on which last-mentioned day the business was terminated and closed by mutual consent and the defendant then expressly agreed to divide the partnership assets share and share alike, but subsequently failed and refused to do so.

Plaintiff testified that he was an experienced saloon man, having previously worked in that business for many years; that he and the defendant had been friends and roomed together; that he had been employed by Ranby Soldane who owned the Diamond Bar in Yreka and learned from him that he intended to sell his business; that he persuaded the defendant to associate with him as a partner for the purchase and operation of that saloon business; that the saloon was purchased by them for the sum of $3,500, which was obtained by the defendant and repaid according to agreement from the assets of the business; that the plaintiff employed the help, managed the business and devoted from twelve to fourteen hours per day to its operation and the defendant took charge of the bookkeeping and assets and he personally assisted in the operation of the saloon; that the business was profitable

and each partner withdrew from the cash receipts from $200 to $350 per month; that the partners also invested proceeds from the business in the purchase of hogs and fruit, upon the sale of which the profits were equally divided; that they printed Christmas cards and twenty-five thousand match covers advertising the partnership and containing the legend "Dan and Roy, The Diamond," which were distributed to customers; that the defendant introduced plaintiff to several individuals as his partner; that plaintiff relied upon the defendant to secure the necessary liquor license for operating the partnership business, but that defendant, without plaintiff's knowledge or consent, procured a license in his individual name only; that when plaintiff discovered that fact he protested to the defendant and demanded that his name be included in the license; that defendant claimed he obtained the license in his own name to protect him and his wife who had raised the purchase price of the saloon by mortgaging their mining property, but that, as soon as the purchase price was repaid he would have plaintiff's name included in the license; that the purchase price was fully repaid but that the defendant then failed and refused to permit plaintiff's name to be included in the license; that the dispute over the liquor license led to irreconcilable differences and a voluntary termination of the business by mutual consent on February 1, 1944, together with an express promise on the part of the defendant to divide the remaining assets of the business equally. The plaintiff testified in that regard: "We decided we would split it right half and half, which was agreeable with him. . . . He said, 'We will split it right down the middle. You go your way and I will go mine.'"

■ The question of the existence of a partnership between the parties thereto depends primarily upon the intention of the parties ascertained from the terms of the agreement and from the surrounding circumstances. (*De Rigne* v. *Hart,* 94 Cal.App. 209 [270 P. 1013]; *Kersch* v. *Taber,* 67 Cal.App.2d 499 [154 P.2d 934]; 20 Cal.Jur. § 7, p. 686.) A partnership is an association of two or more persons to carry on as co-owners a business for profit. (Civ. Code, § 2400.) ■ Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in the profits and losses and in the management of the business. (*Black* v. *Brundige,* 125 Cal.App. 641 [13 P.2d 999]; *Smith* v. *Grove,* 47 Cal. App.2d 456 [118 P.2d 324]; *Martin* v. *Sharp & Fellows Cont.*

*Co.,* 34 Cal.App. 584 [168 P. 373] ; *Kersch* v. *Taber, supra;* 20 Cal.Jur. § 9, p. 689.) There is a clear distinction between an agreement to operate an illegal enterprise such as the business of prostitution or gambling, and the mere conducting of a legal business in an illegal manner without the license required by law, such as the real estate brokerage business or the saloon business. We may assume the saloon business, which is involved in the present case, was illegally conducted since a liquor license was not secured to include the name of the plaintiff as required by the Alcoholic Beverage Control Act. Section 7 of that act provides that "Each license . . . shall be issued to a specific person." Section 10 provides that "The application shall be signed by the applicant. In the case of a partnership the application shall be signed by each of the partners." Section 8 provides that "All retailer's on-sale licenses, . . . shall be issued on a calendar year basis." The plaintiff testified that he relied upon the defendant to procure the necessary licenses, which he failed to do. On account of that omission the business was actually conducted illegally, even though it was chiefly the defendant's fault. We may assume the plaintiff was not *in pari delicto* in failing to secure the license. ▇ But we cannot escape the conclusion that the illegal conducting of the saloon business without a proper license for each individual partner would ordinarily require the court to refuse upon the ground of public policy to determine issues between the partners regarding the division of, or the title to the assets of the business. (*Wise* v. *Radis,* 74 Cal.App. 765 [242 P. 90].) But there is a well-recognized exception to that rule which appears to be founded on good morals and sound judgment. When a business, which has been illegally conducted for lack of license, as distinguished from an unlawful and forbidden enterprise, has been completely terminated and one of the parties subsequently expressly agrees to divide in a specified manner the assets in his possession, courts will entertain suits for accounting, in assumpsit, or based on an implied trust, to recover the property belonging to the claimant. (*Planters' Bank* v. *Union Bank,* 83 U.S. 483 [21 L.Ed. 473] ; *Fryer* v. *Harken,* 142 Iowa 708 [121 N.W. 526, 23 L.R.A.N.S. 477], note; *Central Labor Council* v. *Young,* 136 Wash. 550 [240 P. 919] ; *De Leon* v. *Trevino,* 49 Tex. 88 [30 Am.Rep. 101] ; *Bellew* v. *Jacobs* (Tex.Civ.App.), 229 S.W. 928; 47 C.J. § 44, p. 652; 40 Am.

Jur. § 327, p. 359.) The reason assigned for the application of the foregoing exception to the general rule is expressed in the Central Labor Council case, *supra*, quoting with approval from the Planters' Bank case, *supra*, that:

"When the illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiffs, the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them. Some of the authorities show that, though an illegal contract will not be executed, yet, when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise, express or implied, and the court will not unravel the transaction to discover its origin."

If that distinction controls an executed agreement which was illegally designed by the parties, it should apply with greater justice and force to a division of assets expressly agreed upon by the parties after the termination of the business by mutual consent which was merely conducted without a license contrary to law. This is especially true when the plaintiff is not *in pari delicto*, or when he is at least much less culpable of wrongful conduct.

The same exception to the rule is expressed in 40 American Jurisprudence at page 360, as follows:

"Instead of an implied promise [to divide the assets after voluntary termination of the business], there may be an express promise, and where an illegal contract or partnership venture has been executed without the aid of the courts, by the voluntary acts of the parties, and a division of the profits has been agreed on, it seems to be generally considered that such divison of profits forms a new contract, and that the partner entitled to a share of such profits may enforce his right thereto in the courts."

The foregoing exception to the general rule is well established and supported by reputable authorities. ■ When an illegal contract has been fully performed and is voluntarily terminated without the aid of a court, and the possession by

one party of property belonging to the other party is acknowledged, the source from which that property was derived becomes immaterial and the construction of the legality of the defunct contract is unnecessary. Under such circumstances it may not be said courts are aiding or encouraging the execution or fulfillment of illegal contracts. A court is not expected to trace the source of property beyond the issues necessarily involved, merely to determine whether it is tainted with illegality so as to punish the parties for violation of the law. The rule is intended to preserve the dignity of the law by refusing to determine controversies dependent upon the construction of illegal contracts. That rule is limited to the necessity of depending on the illegal contract to determine the issues. If that rule were not so limited, the courts would often be required to assume the impossible burden of determining just how serious or remote the taint may be.

In none of the cases relied upon by the appellant, and in none which we have been able to discover, has it been held that a court will refuse to determine issues regarding the ownership or possession of the assets of an illegal enterprise, or of a business which was conducted in an illegal manner, after the contract was executed and the business voluntarily terminated without the aid of the courts, and an agreement for division of the assets was subsequently made.

In the case of *Chateau* v. *Singla*, 114 Cal. 91 [45 P. 1015, 55 Am.St.Rep. 63, 33 L.R.A. 750], the court held that it was precluded, on the ground of public policy, from entertaining an action for accounting for the proceeds of an illegal contract involving the maintenance of houses of prostitution. The judgment of the trial court was reversed. But the contract was for a continuing business. There was no evidence that the business had been terminated by consent of the parties or otherwise. Nor was there any evidence of an agreement to divide the property after a voluntary termination of the business. The foregoing exception to the general rule was not discussed or involved in that case.

In the case of *Wise* v. *Radis*, 74 Cal.App. 765 [242 P. 90], upon which the appellant chiefly relies, a judgment for plaintiff in a suit in assumpsit was reversed on the theory that it was founded on an illegal contract to divide broker's commissions in a continuing association or business of "negotiating the purchase and sale of real properties." That case is readily distinguishable from this suit since the transaction upon

which plaintiff sued for "money had and received," was only one sale in a continuing business relationship as real estate brokers. Neither the termination of the business by voluntary action nor subsequent agreement to divide the proceeds was discussed or involved in that suit. For the reason that one of the parties failed to renew his broker's license as required by law, and because he held no license during the time in which a part of the business was transacted, the court properly held that the general rule precluded it from entertaining the action which was founded on an illegal oral agreement "to work together as brokers in negotiating the purchase and sale of real properties." That case is not determinative of the issues which are involved in this suit. That decision does not contemplate the exception to the rule above stated. We know of no case in conflict with the preceding statement of the exception to the general rule. It appears to be sound and just.

Conceding that the saloon business was conducted illegally because a partnership license was not procured in the names of both partners as required by law, we are satisfied that the plaintiff is nevertheless entitled to maintain this suit for an accounting of assets because it does not necessarily involve the legality of the partnership agreement to conduct the Diamond Bar saloon but depends upon the oral agreement to divide the property equally which was made by the parties after the voluntary termination of the business without the aid of court.

The interlocutory judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied August 17, 1945, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1945.