[L. A. No. 21376. In Bank. Oct. 26, 1951.]

LYLE H. BANKS et al., Respondents, v. SAMUEL J. PUMA et al., Appellants.

Michael F. Shannon and Thomas A. Wood for Appellants.

Don Lake for Respondents.

SCHAUER, J.—Defendants appeal from an adverse judgment in plaintiffs' action for an accounting and to recover a share of profits realized on the sale of certain land to which defendants held title. It appears that the trial court correctly determined that plaintiffs are entitled to participate in such profits, and that the judgment should be affirmed.

█ The controversy was submitted to the trial court on a stipulation of the following facts: Plaintiff Mrs. Baker by reason of her position as a director of the firm of Mullen & Bluett, learned that that firm planned to construct a new building on land which was already improved with five occupied residential buildings which were to be moved therefrom and sold. She consulted plaintiff Mr. Banks, who was "in the real estate business," and the two plaintiffs then obtained an option from Mullen & Bluett to purchase the five buildings. They lacked sufficient funds for the transaction, but arranged with a Mr. and Mrs. Royden for the latter to furnish the money. The Roydens deposited $5,000 with Mullen & Bluett, and on October 12, 1945, a written agreement to sell the buildings for $19,000 was executed by that firm, with Mr. Royden named as buyer; the buyer agreed to take the steps necessary to evict the tenants, including securing Certificates of Eviction from the Office of Price Administration and to then move the buildings. Banks thereafter negotiated for the purchase of certain vacant lots to which the buildings were to be moved; the Roydens were to furnish the entire purchase price of the lots.

On November 1, 1945, a written agreement was entered into between the Roydens and plaintiffs covering the transaction to this point. The agreement recited that Mrs. Baker, as a director of Mullen & Bluett, had learned of the firm's intention to sell the five buildings; that plaintiffs had determined that if the buildings could be purchased from Mullen & Bluett and new lots acquired for them at a reasonable price, the venture would show a profit; that plaintiff Mrs. Baker had agreed with Mullen & Bluett to purchase the buildings for $19,000; that plaintiff Banks then negotiated the purchase of seven lots for the buildings "at a price considerably under the existing market value" and an escrow was opened for such purchase; that Banks also secured from the Department of Building and Safety of the City of Los Angeles "their approval for the severance and removal of said five buildings to the lots purchased"; that thereafter plaintiffs "determined that they would need further finances than at their command to" complete the project. The parties therefore agreed that

the project "is the sole and original idea of the" plaintiffs; that the Roydens would furnish "all funds for the purchase, moving, reconstruction, . . . necessary to complete the buildings in their new location"; that plaintiffs would "to the utmost of their ability, aid and assist in all negotiations, supervision and transactions pertaining to the moving, reconstruction and sale of said five buildings" and "if and when, said properties are sold by either of the parties hereto, any commission accruing from said sale shall be waived and be considered as a part of the profit of this transaction and be participated in by all parties hereto"; that all parties entered into the transaction "for the sole purpose of selling said property at the most advantageous time and price, and that all parties hereto will do their utmost to obtain a maximum profit from the sale thereof"; that "the time and effort and commission contributed by" plaintiffs "offset, more or less, the interest on funds invested by" the Roydens, and therefore the latter agreed "to waive any interest charge on funds invested by them" in the enterprise; that title to all property "entailed in this transaction be vested in" the Roydens and that plaintiffs "are in no wise to be held responsible for any loss or damage resulting from" the enterprise; that "before any of said property is sold an agreement to sell same shall be confirmed by no less than three of the parties"; that "all proceeds from all property sold" would "accrue to" the Roydens until their "invested capital has been repaid" and thereafter "all profit and proceeds from the sale of said properties shall be divided" 50 per cent to the Roydens and 25 per cent each to plaintiffs Mrs. Baker and Mr. Banks; in the event "it is not deemed advisable to sell" the buildings by at least three of the parties and "it is decided to rent them, the net profit accruing from said rentals . . . shall be divided on the same basis as above."

Thereafter defendants Mr. and Mrs. Puma acquired the interest of the Roydens, reimbursing the latter for the $5,000 deposit made with Mullen & Bluett. In a new written contract between the Pumas and plaintiffs in which the purchase by the Pumas of the interest of the Roydens is recited, the Pumas assumed the obligations of the Roydens under the agreement of November 1, and specifically agreed to furnish all funds for the purchase, moving and reconstruction of the buildings in the new location; the parties further agreed that "title on deeds and Bill of Sale on all property entailed in" the transaction be vested in the Pumas; that after reimburse-

ment to the Pumas of all funds advanced "all profit and proceeds from the sale" of the properties would be divided as follows: 37½ per cent to the Pumas; 25 per cent to plaintiff Mrs. Baker and 37½ per cent to plaintiff Banks.

Defendants, the Pumas, then deposited in escrow the full purchase price of the lots to which the buildings were to be moved. Thereafter, pursuant to permission from the Office of Price Administration, notices to vacate were given to the tenants of such buildings. The following day the federal agency which handled the permit which was necessary for Mullen & Bluett to erect its building, cancelled such permit; and thereupon the OPA cancelled the notices to the tenants, thus interrupting their eviction and removal of the buildings. Thereafter plaintiffs gave to defendants a letter stating that "This letter is your authority to cancel all negotiations with" Mullen & Bluett for purchase of the buildings, and that "In this cancellation you will recieve personally the deposit money paid on said contract by" the Roydens; such negotiations were then terminated and the $5,000 returned by Mullen & Bluett to defendants. At that time title to the seven lots stood in the names of defendants Puma, who had advanced $19,171.85 as the purchase price and incidental costs. Banks and Puma, in an attempt to sell the lots, placed a sign thereon with the names, addresses and telephone numbers of Banks and of Mrs. Baker. Thereafter defendants sold the lots for $25,000 without the knowledge or consent of plaintiffs, and plaintiffs brought this action to recover their claimed proportionate shares of the profits on the sale, pleading the two written agreements described hereinabove. The court found that after payment of certain expenses there was a profit of $4,276.69 from the sale, and awarded 25 per cent thereof to plaintiff Mrs. Baker and 37½ per cent thereof to plaintiff Banks.

Defendants urge that since the action of the two federal agencies made it impossible to remove the buildings to the new lots "this resulted in a complete economic frustration without fault of the defendants, and that the contract [between defendants and plaintiffs] by reason thereof came to an end," and entitled defendants to keep the entire profits realized from the purchase and sale of the seven lots without accounting to plaintiffs for any share thereof. In effect defendants' claim is that because performance of the enterprise in its contemplated entirety became impossible the purchase and sale of the lots should not be regarded as a part of the

joint enterprise. But the fact is inescapable that it was in part performance and for the benefit of the joint enterprise that the lots were acquired. Having been so acquired it must follow that they were held and disposed of for the joint venture unless that result is precluded by the agreement of the parties or by operation of law. We find neither such agreement nor law.

Although we may assume that the doctrine of economic frustration might have excused performance by any of the parties to the contract by which Mullen & Bluett agreed to sell and the parties to this action agreed to buy the buildings which were to be moved (a matter, however, which is not before us here), defendants cite no authority and we are aware of none in which that doctrine has been held to excuse the accounting by one of the parties to a joint enterprise of profits therefrom which have come into his possession through part performance. Rather, the doctrine, as indicated by the cases cited by defendants, has operated, in actions for damages or for breach of contract, to excuse a performance by one of the parties, which had become impossible to complete. (See *Metropolitan Water Board* v. *Dick, Kerr & Co.* [1917], 2 K.B. 1, 8, affd. [1918] A.C. 119; *Texas Co.* v. *Hogarth Shipping Co.* (1921), 256 U.S. 619 [41 S.Ct.612, 65 L.Ed. 1123]; *Hackfeld & Co., Ltd.* v. *Castle* (1921), 186 Cal. 53 [198 P. 1041]; *Johnson* v. *Atkins* (1942), 53 Cal.App.2d 430 [127 P.2d 1027].)

Although failure to acquire the buildings and add them to the lots resulted in a smaller profit than anticipated by the parties to the joint enterprise, the contracts between them specifically provide that ''all proceeds from all property sold'' would ''accrue to'' defendants until their ''invested capital has been repaid'' and thereafter ''all profit and proceeds from the sale of said properties shall be divided'' in the specified percentages among the parties. The references to ''all property'' and ''said properties'' appear by their very terms to include both houses and lots, and not to exclude profits from either if sold separately; pertinent to the issue here, they were impliedly determined by the trial court, upon all the evidence before it, not to have contemplated that a profit from sale of the lots without the houses should belong exclusively to defendants. A part of the project could not be consummated but in part it reached fruition. The failure of the part did not work legal frustration of the enterprise insofar as it was accomplished. The fact that Puma cooperated with Banks in placing a for sale sign on the lots, carrying the

·names, addresses and telephone numbers of plaintiffs, tends to indicate that the parties themselves understood that sale of the lots was a step in winding up the affairs of their joint enterprise and that profits therefrom would fall within the contractual purview. Under the circumstances shown the interpretation of the trial court is conclusive here. (See *Edwards* v. *Billow* (1948), 31 Cal.2d 350, 359 [188 P.2d 748], and cases there cited; *Quader-Kino A.G.* v. *Nebenzal* (1950), 35 Cal.2d 287, 294 [217 P.2d 650].)

 We find untenable defendants' contention that they alone contributed consideration and value toward the enterprise and assumed all the risk incident thereto. The record shows and the contracts between the parties recite the contribution of plaintiff Mrs. Baker of the information that the buildings were available, and the efforts and initiative invested thereafter by both plaintiffs in negotiating the purchase of the buildings, the purchase of the lots at a price "considerably under the existing market value," the securing of permits to remove the buildings, etc. Viewing the entire transaction it appears that all contracting parties made substantial contributions to the project and that plaintiffs are fairly entitled to the proportions of the profits as awarded.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.