[Civ. No. 4823. Fourth Dist. July 6, 1954.]

THOMAS ADLER, Appellant, v. JOHN A. CAMPBELL et al., Respondents.

Crittenden, Holley & Gibbs, Irene Brooks Adler and Phillip Crittenden for Appellant.

David H. Thompson and Sweet, Ault & Warner for Respondents.

BARNARD, P. J.—This is an action for dissolution of a joint venture, for an accounting, and for declaratory relief.

On November 12, 1951, these parties entered into a construction contract under which the plaintiff, as contractor, agreed to build an 8-unit apartment house on ''Law Street'' for the defendants. Construction started in February, 1952, and was completed in September, 1952. That project is not directly involved in this action.

Shortly after November 12, these parties discussed the possibility of a joint venture in the erection of other buildings. On November 26, 1951, they signed an agreement which was drawn by the plaintiff's wife, who was admitted to practice law but who was in charge of the plaintiff's office and who, through the period in question, took a leading part in carrying on his business affairs.

This agreement, after designating the defendants as owners and the plaintiff as contractor, recited that the owners ''have heretofore purchased and are now purchasing'' three described vacant lots for the purpose of having buildings erected thereon ''for sale, exchange, rental or other income producing development,'' and that the owners are desirous of engaging with the contractor, jointly, ''in the business of developing the said lots.'' It was then provided, so far as material here, that the owners were to furnish all funds required in the various projects, including necessary funds from lending institutions; that the contractor should furnish his services in the construction involved and should assist the owners in the selection of suitable building sites; that the net profits arising from said projects should be equally divided between the owners and contractor; that all expenses of every kind, except any allowance to the contractor or to the owners for their services, should be chargeable in computing the net profit; that the ''net profit shall be the difference between lot cost, cost of plans, construction costs'';

that upon the final inspection by the building department of "any" construction under the contract the owners shall cause the title to be transferred so as to stand in the name of both parties; that "any project developed hereunder" should be sold only at a net profit of at least 20 per cent above the total cost, including the cost of construction, unless the parties agreed in writing to a smaller profit; and that this agreement should not apply to the apartment being erected under the agreement of November 12.

The three lots covered by the contract, referred to as Parcel 1, Parcel 2, and Parcel 3, were purchased by defendants with their own funds. During the construction of the Law Street apartments the defendants became dissatisfied with plaintiff's services because of the way in which the work was done and because, in order to complete that project, they were compelled to put in a much larger amount of money than had been represented to them as necessary by the plaintiff. About the first of June, 1952, and several times later, the defendants told the plaintiff that they would not go ahead with any other building deals with him. In July, the defendants sold Parcel 2 and turned over the proceeds to the plaintiff to provide additional funds required to complete the Law Street apartments. In September, 1952, the defendants agreed to sell Parcel 3 at a substantial profit and went into escrow thereon.

In this action the plaintiff alleged that the parties had entered into a joint venture agreement "for the purpose of developing" these parcels of land, and had agreed to divide the profits resulting from "said projects"; that the plaintiff had duly performed his part of the contract; and that the defendants had attempted to repudiate "said joint adventure," and had refused to allow plaintiff to continue his services. Judgment was asked for dissolution of the joint venture, for an accounting of the profits on the two parcels sold, and for a declaration as to the rights and duties of both parties in relation to said contract. The defendants admitted the execution of the contract on November 26, and that they had refused to allow plaintiff to continue his services, but denied that any sale of lots was in violation of the agreement, and denied that plaintiff was entitled to any profits from the joint venture. It was further alleged that, under the terms of their agreement, they are under no obligation to the plaintiff unless said properties are, in fact, improved and a sale then made at a profit; and that defendants

had rescinded the contract before any of the property was sold.

The court found that the defendants purchased Parcel 1 on November 16, 1951, and still own it; that the plaintiff contributed nothing to its purchase and it is still unimproved; that they purchased Parcel 2 on November 13, 1951, and the plaintiff contributed nothing thereto; that defendants sold Parcel 2 in July, 1952, for a net profit of $112.13; that it was necessary for defendants to sell said lot in order to meet obligations arising from the construction work on the Law Street property; that the defendants offered to purchase Parcel 3 on November 13, 1951, and exercised their option on January 14, 1952; that the plaintiff contributed nothing to said purchase; that the defendants sold Parcel 3 on September 26, 1952, at a considerable profit, the exact amount being yet undetermined; that it was necessary for the defendants to sell Parcel 3 for the reason that they were unable to meet the payments called for by a trust deed on the property; that at the time the agreement of November 26, 1951, was executed it was understood and agreed by the parties that the plaintiff had no interest in these lots unless and until construction thereon was completed, and that the defendants could sell any of said property in an unimproved condition without plaintiff's consent and without any liability to plaintiff for any part of the profit derived from such sale; and that the amount of time spent by plaintiff in planning for the development of this real property was negligible. As conclusions of law, it was found that the plaintiff was not entitled to share in the profits in the sale of Parcels 2 and 3; that the plaintiff has no right or interest in any of the three parcels; and that plaintiff take nothing by his complaint. Judgment was entered that the plaintiff take nothing by reason of his complaint, and this appeal followed.

The main contention here made is that the findings to the effect that it was understood and agreed by the parties, at the time the agreement was executed, that appellant was to have no interest in these lots unless buildings were constructed thereon, and that respondents were free to sell the lots, are not supported by any admissible evidence. It is argued that this contract is unambiguous and contains no such provisions, and that under the parol evidence rule evidence was not admissible for the purpose of adding a provision which was not even mentioned in the agreement.

The contract in question strongly indicates on its face that it was intended to provide for a joint venture in construction projects on these three lots. Its stated purpose was the erection of buildings on these lots. The net profits from such projects only was to be divided, and these net profits were defined as being the difference between the amount received and the total costs, including construction costs. Transfer of title was not to be made until after final inspection of any construction, and it was provided that any project developed thereunder should be sold only for a price giving a net profit of at least 20 per cent above all costs, including construction costs. ▮ ▪While indicating that this joint venture was one in certain building operations, rather than one involving lot speculation, the contract is entirely silent with respect to what should happen in the event no such building operations should be carried on. In this situation the court admitted evidence with respect to the intention of the parties in this regard, at the time the contract was entered into. The evidence received in that connection amply supports the findings complained of. That evidence was not admitted to vary the terms of a written contract and did not serve that purpose. It was admitted for the purpose of determining the true intent of the parties with respect to a matter on which the contract is entirely silent. Under well established rules, that evidence was admissible. (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665] ; *MacIntyre* v. *Angel,* 109 Cal.App.2d 425 [240 P.2d 1047] ; *Bartel* v. *Associated Dental Supply Co.*, 114 Cal.App. 2d 750 [251 P.2d 16] ; *Schmidt* v. *Macco Construction Co.*, 119 Cal.App.2d 717 [260 P.2d 230].) This evidence, with the contract itself, supports the findings made.

It is next contended that another finding, that the amount of time spent by the appellant in planning for the development of these lots was negligible, is not supported by the evidence. Not only is this finding supported by respondents' evidence, but additional support appears from the improbable nature of appellant's evidence in that regard.

The further contentions, that the court erred in failing to make findings with respect to the termination of the agreement, and with respect to appellant's damage caused by the termination of the agreement, are without merit. No damages were alleged or proved and in view of the other findings and the evidence received, no possible prejudice

appears. It may be further observed that the evidence would have supported a finding that this contract, whatever its meaning, was rescinded by mutual consent before any of the lots were sold.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied July 26, 1954, and appellant's petition for a hearing by the Supreme Court was denied September 2, 1954.