VALLÉE, J.
 

 Appeal by plaintiff from a judgment entered on the sustaining of an amended demurrer to the first amended complaint without leave to amend in a suit for dissolution of an alleged joint venture and for an accounting.
 
 [1]
 

 The first amended complaint alleges:
 

 1. In June, 1954, plaintiff and defendant entered into an oral joint venture agreement for the purpose of converting four old and useless buildings on realty then owned by defendant in Gardena, California, into modern apartment buildings for operation and resale.
 

 2. By the agreement defendant agreed he would convey to plaintiff a half interest in the realty and the buildings thereon and plaintiff and defendant agreed they would thereupon convey their interests to the joint venture. Defendant agreed to provide all moneys necessary for the conversion and reconstruction of the buildings into modern apartments. Plaintiff agreed to “provide all services required in supervising the redesigning, remodelling and reconstruction of said apartment buildings, provide for all labor and materials required in said conversion and reconstruction, supervise all labor and construction on said premises, furnish his building equipment, tools, power tools, trucks, knowhow and labor to
 
 *56
 
 the redesigning, remodelling and reconstruction of said apartment buildings, obtain all necessary permits and do all things necessary to convert and reconstruct said apartment buildings and make the same ready for occupancy and resale in accordance with the standards required by the City of Gardena and the Federal Housing Act. ’ ’
 

 3. It was agreed that plaintiff and defendant were each to be entitled to a half interest in all assets of the joint venture and the rents, issues, and profits thereof.
 

 4. Defendant furnished all moneys necessary to convert and reconstruct the buildings into modern apartment buildings, except certain moneys furnished by plaintiff. Plaintiff performed all acts, services, and things required of him under the agreement. In addition, and at the request of defendant, plaintiff with his own funds purchased two parcels of realty near the apartment buildings for the purpose of providing parking facilities for the apartment buildings and thereby making the buildings more readily rentable and salable.
 

 5. In June, 1956, the conversion and reconstruction of the buildings into modern apartments were completed. Thereafter defendant took exclusive possession of them, rented the apartments, and received and retained the rents therefrom, the amount of which is unknown to plaintiff without an accounting.
 

 6. The two parcels purchased by plaintiff are being used by defendant as a parking lot for the tenants of the buildings. Plaintiff tenders to the joint venture the two parcels, and offers to convey them to the joint venture on defendant’s performing his obligations pursuant to the agreement.
 

 7. Plaintiff has demanded of defendant that he perform the agreement and furnish plaintiff with an accounting of all moneys received and disbursements made in connection with the operation of the buildings. Defendant has refused, he has repudiated the agreement, and contends plaintiff has no interest whatsoever in the assets of the joint venture or in the rentals therefrom.
 

 8. At all times the parties were related, in that defendant is the brother of plaintiff’s wife. By reason of the relationship, the parties mutually reposed great trust and confidence in the other in all transactions between them.
 

 The demurrer, which was general, was sustained on the ground the cause of action pleaded is one by an unlicensed person having performed the duties and services of a contractor for either half of the profits resulting from the services
 
 *57
 
 by forcing a sale of the property or half of the property itself; that since plaintiff was unlicensed the agreement was unlawful.
 

 The rules governing a trial court and a reviewing court in determining the sufficiency of a pleading are, or should be, well known and need not be repeated. We have stated them at length recently in
 
 M. G. Chamberlain & Co.
 
 v.
 
 Simpson,
 
 173 Cal.App.2d 263, 267 [343 P.2d 438].
 

 The common definition of a joint venture is “ ‘a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.’ ”
 
 (Sime
 
 v.
 
 Malouf,
 
 95 Cal.App.2d 82, 95 [212 P.2d 946, 213 P.2d 788].) The relation of joint venturers is founded on contract. Whether the parties have created such a relationship as between themselves depends on their actual intention. The law requires little formality in the creation of a joint venture. The relationship may be created by oral agreement. (28 Cal.Jur.2d 484, § 6.) The relationship between the parties is not to be determined by the label which the pleader gives to an
 
 agreement;
 
 it is to be determined by the ultimate facts pleaded.
 
 (Smith
 
 v.
 
 Grove,
 
 47 Cal.App.2d 456, 461 [118 P.2d 324].)
 

 A substantial contribution can be made to a joint enterprise by the furnishing of knowledge, skill and services, as well as by money.
 
 (Banks
 
 v.
 
 Purna,
 
 37 Cal.2d 838, 842-843 [236 P.2d 369].) The contributions of the respective parties to a joint venture need not be equal or of the same character.
 
 (James
 
 v.
 
 Herbert,
 
 149 Cal.App.2d 741, 748 [309 P.2d 91].) Whether an agreement to share profits is merely a measure of compensation for services, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute a joint venture, is a question of fact.
 
 (Nelson
 
 v.
 
 Abraham,
 
 29 Cal.2d 745, 750 [177 P.2d 931] ;
 
 Milton-Kauffman, Inc.
 
 v.
 
 Superior Court,
 
 94 Cal.App.2d 8, 17 [210 P.2d 88].) If there was an agreement for a joint venture, the parties assumed the status of fiduciaries and neither one would have a right, while the joint venture existed, to acquire the subject property to the exclusion of the other.
 
 (Lasry
 
 v.
 
 Lederman,
 
 147 Cal.App.2d 480, 487 [305 P.2d 663].) A joint venturer holding the property for the joint venture is a trustee for his coventurer and this is so though he purchased the property with his
 
 *58
 
 own funds.
 
 (Koyer
 
 v.
 
 Willmon,
 
 150 Cal. 785, 787 [90 P. 135];
 
 Lindner
 
 v. Friednash, 160 Cal.App.2d 511, 517 [325 P.2d 612]; 28 Cal.Jur.2d 494, § 12.)
 

 “Although it has been contended that the property with which the parties to a joint adventure are to operate must be acquired after the relationship has come into existence, it seems clear that it is immaterial whether the property involved was individually owned before the joint venture was entered upon or was afterward acquired, so long as it was contributed and devoted to the uses and purposes of the enterprise. ... A joint adventure may be formed for the purpose of a single transaction in real estate. A joint adventure exists where two or more persons enter into a contract for the purchase and resale of land, agreeing to divide the profits, although the purchase is to be financed by one of the persons only, the others furnishing no money, but agreeing that the former shall be first repaid money advanced before any division of profits shall be made. . . . Similarly, it has been held that a joint adventure exists under an agreement for the equal sharing of profits by one who furnishes the money for the purchase of certain realty and by another who furnishes his time, skill, and supervision in the purchase, the clearing of title, and the development of the property. Likewise, an agrément between the owner of lots and a building contractor, for the construction of houses on the lots and a division of the profits from the sale of the houses, has been held to give rise to the relationship of joint adventurers, rather than that of master and servant or of independent contractor, where it discloses an intent that both parties shall contribute to the enterprise, exercise joint control over it, and be accountable to each other for their acts in carrying it out.” (30 Am.Jur. 945, § 9; 949, § 15; 950, § 16.)
 

 In
 
 Keiswetter
 
 v.
 
 Rubenstein,
 
 235 Mich. 36 [209 N.W. 154, 48 A.L.R. 1049], it was held that an agreement whereby an owner of lots furnishes the money to build houses thereon, pays all bills for labor, materials, and incidental expenses, and does all office work, incidentally watching the progress of the building operations; and the other party, a building contractor, furnishes skill and labor in building the houses, and orders all material therefor; which agreement contains a provision for division of the profits upon the sale of the houses; shows clearly an intention of the parties to associate themselves together for the express purpose of combining in a joint venture.
 

 On facts similar to those at bar, it has been held that the
 
 *59
 
 agreement constituted a joint venture. (See
 
 Koyer
 
 v.
 
 Willmon,
 
 150 Cal. 785 [90 P. 135] ;
 
 Hanson
 
 v.
 
 Burford,
 
 212 Cal. 100 [297 P. 908] ;
 
 Larson
 
 v.
 
 Thoresen,
 
 36 Cal.2d 666 [226 P.2d 571] ;
 
 Banks
 
 v.
 
 Puma,
 
 37 Cal.2d 838 [236 P.2d
 
 369]; Ingram
 
 v.
 
 Johnston,
 
 38 Cal.App. 234 [176 P. 54];
 
 Irer
 
 v.
 
 Gawn,
 
 99 Cal.App. 17 [277 P. 1053] ;
 
 Parker
 
 v.
 
 Trefry,
 
 58 Cal.App.2d 69 [136 P.2d 55];
 
 Fitzgerald
 
 v.
 
 Provines,
 
 102 Cal.App.2d 529 [227 P.2d 860];
 
 Adler
 
 v.
 
 Campbell,
 
 126 Cal. App.2d 421 [272 P.2d 115] ;
 
 James
 
 v.
 
 Herbert,
 
 149 Cal.App. 2d 741 [309 P.2d 91] ;
 
 Lindner
 
 v.
 
 Friednash,
 
 160 Cal.App.2d 511 [325 P.2d 612].)
 

 The first amended complaint alleges facts sufficient to show the creation of a joint venture.
 

 Section 7028 of the Business and Professions Code makes it unlawful for “any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor. ...” Section 7026 defines a contractor as “any person, who . . . does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road . . . or improvement. ...” Section 7030 makes it a misdemeanor for any person to act in the capacity of a contractor without a license. Section 7031 provides that, “No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract. ’ ’
 

 The first amended complaint does not allege that plaintiff was a duly licensed contractor at all times during the performance of the agreement. Further, it appears to be conceded that he was not.
 

 It is held that the illegality of operation of a contracting joint venture, without having procured the license required by Business and Professions Code, section 7029, does not preclude a party thereto from instituting proceedings for dissolution of the venture and an accounting.
 
 (Norwood
 
 v.
 
 Judd,
 
 93 Cal.App.2d 276 [209 P.2d 24];
 
 Galich
 
 v.
 
 Brkich,
 
 103 Cal.App.2d 187 [229 P.2d 89] ;
 
 Wold
 
 v.
 
 Luigi Consentino & Sons,
 
 109 Cal.App.2d 854 [241 P.2d 1032].)
 
 Norwood
 
 v.
 
 Judd, supra,
 
 was a suit to dissolve a partnership and for an accounting. The partnership was engaged in the business of
 
 *60
 
 sand blasting and spray painting. It did not have a contractor’s license. The trial court held that the type of work done by the partnership required a contractor’s license issued in the name of the partnership; that the absence of a license rendered the partnership business illegal and void; and that the plaintiff was not entitled to an accounting or to any division of the profits. Reversing, the court first held that the work performed by the partnership fell within the inhibition of section 7026 of the Business and Professions Code, and then stated (p. 283) :
 

 “The basic question presented is whether, under the facts here disclosed, the failure to secure a partnership license precludes plaintiff from recovering any portion of the assets and profits because of the principle that, having engaged in an illegal enterprise, he is
 
 in pari delicto
 
 and has not come into equity with clean hands, and must therefore be denied all relief. ...
 

 “The principle that participants to an illegal contract who are
 
 in pari delicto
 
 can secure no relief based on such contract, is an ancient and most salutary one. It is part of the general rule that he who comes into equity must come with clean hands. (See, generally, 2 Pomeroy’s Equity Jurisprudence (5th ed.), §§ 397-404.) The rule in license eases is most frequently applied to those situations where a firm or person required to be licensed fails to secure a license and sues a third person for services rendered or material furnished. In such event the unlicensed firm or person cannot recover because to do so would be to defeat the very purpose of the licensing statute. The contractor’s license law expressly so provides. ...
 

 “ [P. 284.] Where the rights of third parties are not involved, California has recognized another exception to the general rule in certain cases where the action is between the contracting parties. That exception is that equitable relief will not be denied a party to a partnership contract against his partner where the business engaged in is a lawful one and not against public policy, but the parties failed to secure a required license, and where the cause of action is not directly predicated on the partnership agreement, but is or can be predicated on a new promise arising out of the executed partnership agreement. In other words, equity can and will grant relief where the court is not required, in granting the relief, to lend its aid in enforcing a transaction illegal only because a permit that could have been secured was not secured. . . .
 

 
 *61
 
 “ [P. 288.] It must also be conceded that there is at least one California case that has followed the theory expressed by Lord Mansfield. That is the case of
 
 Wise
 
 v.
 
 Radis,
 
 74 Cal.App. 765 [242 P. 90] (no hearing requested), which is strongly relied upon by defendant here. There can be little doubt but that the Wise case is a strong authority in support of defendant. There the plaintiff and defendant each had an individual broker’s license. They orally agreed to work together on certain sales as equal partners. No partnership license was secured as required by statute. The plaintiff allowed his license to lapse. Thereafter, a sale was negotiated and the commission was paid to defendant who refused to split with plaintiff. The appellate court held that the plaintiff could not maintain an action against defendant for his share of the commission. In so holding, the court (p. 780) expressly refused to recognize as an exception to the general rule the doctrine that where the illegal purpose of the partnership has been accomplished an action will lie between partners, and referred to this so-called exception as ‘unsound.’ The court stated (p. 776) : ‘. . . since respondent, in order to establish his case, necessarily must invoke the partnership contract, it follows that, if the issuance of a copartnership license was requisite, the court will not lend its aid to assist either party to the contract in an action against the other, notwithstanding the receipt by the latter of partnership profits, but will leave both parties where it finds them.’
 

 “If this case is still the law of California, it would require an affirmance of the instant case. It was distinguished in the much later Denning case [70 Cal.App.2d 253 (160 P.2d 900)] in which a hearing was denied. A fair reading of the two eases demonstrates that they are diametrically opposed and that, in legal effect, the Denning case overruled the Wise case. It is worth noting that, although the Wise case has, on occasion, been cited in later cases, in most such cases it was cited only to distinguish it. (See
 
 Gatti
 
 v.
 
 Highland Park Builders, Inc.,
 
 27 Cal.2d 687, 689 [166 P.2d
 
 265]; Denning
 
 v.
 
 Taber,
 
 70 Cal.App.2d 253, 257 [160 P.2d 900] ;
 
 Wagner
 
 v.
 
 Worrell,
 
 76 Cal.App.2d 172, 180 [172 P.2d 751].)
 

 “The reasoning of the Denning case is most convincing. The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound public policy. But the
 
 *62
 
 courts should not be so enamored with the Latin phrase
 
 ‘in pari delicto’
 
 that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied. That is the theory of the Denning case, and of the other eases above cited, and we think it is the correct and more enlightened rule.”
 

 The facts at bar present a far stronger ease for not permitting a greedy and avaricious joint venturer to keep for himself all the fruits of the venture to the exclusion of another venturer than do the Norwood, Galich, and Wold cases. Here the joint venture did not render services, furnish materials to third persons, or act as a contractor. It was not formed for such purposes. Plaintiff did not engage in the business of contracting. Pie did not act as a contractor in the strict sense of the term. The parties did not engage in unlicensed transactions with the public. The parties dealt solely between themselves. The joint venture was completed insofar as the agreement provided for the conversion and reconstruction of the buildings into modern apartments. Plaintiff invested his services, property, and money; defendant, his property and money. The suit is not one to divide money or assets derived from dealing with the public in an unlicensed capacity. It is neither against public interest nor public policy to permit plaintiff to maintain the suit. In justice and equity he should not be precluded from recovering his just share of the profits of the venture. We do not think the statute precludes him from doing so.
 

 The venture was a lawful one; it was not against public policy. The suit is not against one of those whom the statute was intended to protect. It is purely a matter of balancing the rights and equities between the parties. To permit plaintiff to recover would not defeat the purpose of the licensing statute. The purpose of the legislation is to deter unlicensed persons from engaging in the contracting business and to protect the public from dishonesty and incompetence in the administration of that business.
 
 (Lewis & Queen
 
 v.
 
 N.
 
 
 *63
 

 M. Ball Sons,
 
 48 Cal.2d 141,149 [308 P.2d 713].) The statute was not intended as an unwarranted shield for the avoidance of a just obligation, the clear purpose for which defendant seeks to employ it. The rule that an agreement which violates a statute enacted for the protection of the public is void and unenforceable is not applied when to do so does not serve the intended purpose of the statute.
 
 (Wilson
 
 v.
 
 Stearns,
 
 123 Cal.App.2d 472, 478 [267 P.2d 59].) The deterrent purpose of the statute is not frustrated by permitting plaintiff to pursue his suit.
 

 Lewis & Queen
 
 v.
 
 N. M. Ball Sons,
 
 48 Cal.2d 141 [308 P.2d 713], and other eases of similar import cited by defendant, are not in point. They were against third parties to enforce directly illegal contracts, not merely to obtain an accounting of profits. The Lewis & Queen case distinguishes such cases from the present. The court stated (p. 151):
 
 “Norwood
 
 v.
 
 Judd,
 
 93 Cal.App.2d 276 [209 P.2d 24],
 
 Galich
 
 v.
 
 Brkich,
 
 103 Cal.App.2d 187 [229 P.2d 89], and
 
 Wold
 
 v.
 
 Luigi Consentino & Sons,
 
 109 Cal.App.2d 854 [241 P.2d 1032], do not support plaintiff’s right to recover. Each of those cases involved an action by a partner or joint venturer to recover a share of profits arising from an illegal enterprise. It was held that, since the enterprise was terminated, since it was not illegal as such but only for want of a license, and since the action was not against a third person for whose protection the statute had been primarily enacted but against a partner or joint venturer, the purpose of the law would not be served by denying relief. . . . The present action is against a third party, and is to enforce directly an illegal contract, not merely to obtain an accounting for profits arising from one.”
 

 We hold that the fact that neither plaintiff nor the joint venture had a contractor’s license does not preclude plaintiff from maintaining the suit.
 

 Defendant asserts the cause of action alleged is barred by the statute of frauds. (Civ. Code, § 1091; Code Civ. Proc., §§1971, 1973, subd. 4.) The point is untenable. In
 
 James
 
 v.
 
 Herbert,
 
 149 Cal.App.2d 741 [309 P.2d 91], the same contention was made on like facts. This court stated (p. 748):
 

 “Defendants argue that because Herbert owned the realty and as a part of his contribution to the joint venture he was to sell the realty to it, and the venture and venturers were thus going to acquire an interest in real property, the agreement was within the statute of frauds and unenforceable. In
 
 Moropoulos
 
 v.
 
 G. H. & O. B. Fuller Co., supra,
 
 186 Cal. 679
 
 *64
 
 [200 P. 601], it was held that where one holding a lease of realty entered into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease was thereby vested in the partnership and a formal assignment of the lease to the partnership was not required. In
 
 Wilson
 
 v.
 
 Brown,
 
 96 Cal.App.140 [273 P. 847],
 
 Champagne
 
 v.
 
 Passons,
 
 95 Cal.App. 15 [272 P. 353], and
 
 Parker
 
 v.
 
 Trefry,
 
 58 Cal.App.2d 69 [136 P.2d 55], one of the joint venturers had interests in realty and oral agreements were entered into with other parties for the transfer of those interests to a joint venture. Joint ventures were held to have been validly formed. The agreement alleged at bar is not within the purview of the statute of frauds.
 
 (Coward
 
 v.
 
 Clanton,
 
 79 Cal.2d 23 [21 P. 359] ;
 
 Bates
 
 v.
 
 Babcock,
 
 95 Cal. 479 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745];
 
 Koyer
 
 v.
 
 Willmon,
 
 150 Cal. 785 [90 P. 135];
 
 Arnold
 
 v.
 
 Loomis,
 
 170 Cal. 95 [148 P. 518] ;
 
 Scott
 
 v.
 
 Jungquist,
 
 179 Cal. 7 [175 P. 412] ;
 
 Fitzgerald
 
 v.
 
 Provines,
 
 102 Cal.App.2d 529 [227 P.2d 860] ;
 
 Lasry
 
 v.
 
 Lederman,
 
 147 Cal.App.2d 480, 487-488 [305 P.2d 663].) ” (Also see
 
 Perelli-Minetti
 
 v.
 
 Lawson,
 
 205 Cal. 642, 647 [272 P. 573] ;
 
 Watson
 
 v.
 
 Kellogg,
 
 129 Cal.App. 592, 595 [19 P.2d 253].)
 

 Prior to the filing of the first amended complaint, these proceedings had been had: the original complaint and the answer thereto were filed; an amended answer was filed; a pretrial order which incorporated a 1 ‘ Statement of Facts and Contentions by Plaintiff” and a “Pre-trial Statement Proposed by Defendant” was made; a “Stipulation of Admitted Facts and for Amendment of Complaint in Accordance Therewith” was entered into between counsel for plaintiff and counsel for defendant; a motion of defendant for judgment on the pleadings was made and plaintiff was granted leave to file an amended complaint; present counsel for plaintiff were then substituted for his former counsel. The first amended complaint now before us was then filed. Defendant contends the first amended complaint omits without requisite explanation facts admitted in the prior proceedings, and attempts to vary without requisite explanation material facts previously stipulated to, and that therefore the general demurrer was properly sustained. We find no basis for the contention.
 

 Mr. Presiding Justice Fox, in
 
 Terry
 
 v.
 
 Bender,
 
 143 Cal.App. 2d 198 [300 P.2d 119], wrote (p. 205) : “There are eight specifications in the special demurrer based on the grounds of ambiguity, uncertainty and unintelligibility of the first cause
 
 *65
 
 of action. In the first two specifications, reference is made to the original complaint in which it is asserted the entire transaction between Bussing and Bender was alleged to be in writing, whereas the amended complaint alleges an oral agreement. In this connection, Bender’s brief makes much of the fact that the original complaint alleges Bussing executed a note secured by a trust deed on the property he acquired through Bender and gave an assignment of rents as further security. The trust deed, in which one Danciu, Bender’s nominee and agent, is named as beneficiary, was attached as an exhibit. The amended complaints omit these matters, and contain a slightly different version of the transaction by which property passed to Bussing. Bender purports to regard this as fatally inconsistent and ambiguous. His argument is founded on an entirely untenable premise. The general rule is that an amended pleading supersedes the original complaint, which thereafter serves no function as a pleading. [Citations.] An exception is recognized where there are allegations in the prior complaint destructive of the cause of action which are omitted in the subsequent pleading without a valid explanation. [Citation.] This is not such a case. All that was omitted were certain evidentiary facts relating to the technique of consummating the Bender-Bussing transaction, which were not essential to the allegation of a cause of action; and all that was varied were unsubstantial details which in no way changed the fundamental character of that transaction. Under such circumstances, Bender’s challenge to the sufficiency of the amended complaint must be determined without reference to the superseded pleading.”
 

 This court in
 
 Wright
 
 v.
 
 Rogers,
 
 172 Cal.App.2d 349 [342 P.2d 447], stated (p. 360) : “The cause went to trial on the third amended complaint. Defendants’ first contention is that the judgment should be reversed because there are inconsistencies between the allegations of the third amended complaint and the allegations of the prior complaints. The point is untenable. We need not state the argument in this respect because it runs counter to the principle contained in the Code of Civil Procedure, section 469 et seq. which liberally permits amendments. The third amended complaint furnished the sole basis of the cause of action and the former ones ceased to have any effect as pleadings or as a basis for judgment. The prior pleadings cannot be looked to for the issues tried. ‘It is well established that an amendatory pleading supersedes the
 
 *66
 
 original one, which ceases to perforin any function as a pleading. . . . By a long line of decisions, it is established in this state that such a pleading is not admissible as direct evidence to establish a fact in issue. [Citations.] The reason for this view is that the use of superseded pleadings to such extent as to embarrass the amending party is in derogation of the policy of liberality in permitting amendments to pleadings. . . .’
 
 (Meyer
 
 v.
 
 State Board of Equalization,
 
 42 Cal.2d 376, 384-385 [267 P.2d 257].) ”
 

 The rule is also stated in
 
 Stockton Morris Plan Co.
 
 v.
 
 Mariposa County,
 
 99 Cal.App.2d 210 (p. 212) [221 P.2d 232] : “ ‘This court cannot consider anything outside of the complaint itself and must disregard any defect that might be reached by a special demurrer. ’
 

 “Applying the foregoing rule, we must, therefore, disregard the stipulation of facts and the testimony appearing in the record, for nothing contained therein can be looked to in support of the judgment on the pleadings. If that judgment cannot stand solely upon deficiencies in the complaint, the proper course would have been the determination of the cause upon the merits. Nor are the issues raised by the answer to be considered, nor the validity of any theory of defense to the action which may be therein set forth. ’ ’
 

 In this connection, defendant makes much of the fact that the first amended complaint avers “That pursuant to the aforesaid joint venture agreement, defendant furnished all monies necessary to convert and reconstruct the aforesaid buildings into modern apartment buildings, except certain monies furnished by plaintiff.” The stipulation of facts entered into between counsel stated, “Plaintiff did not contribute any money either toward the cost of the original acquisition of said property by the defendant, or towards any of the subsequent remodelling and improvement thereof. All such costs were paid by defendant solely and out of his own funds.” However, the original complaint which was verified by plaintiff alleged that at defendant’s request he expended $831.59 for hardwood flooring, furniture and furnishings, and repairs. Whether plaintiff did or did not expend any of his funds in consummation of the venture is a matter of evidence to be determined on an accounting. All the matters to which defendant refers as omitted from the first amended complaint or as varying matters stipulated to are purely evidentiary, not destructive of plaintiff’s cause of action and not essential to the statement of a cause of action. All that was omitted or varied were evidentiary details which in no way changed
 
 *67
 
 the fundamental character of the cause of action alleged in the first amended complaint.
 

 We conclude that the first amended complaint avers facts sufficient to constitute a cause of action.
 

 The judgment is reversed with directions to the superior court to overrule the amended demurrer to the first amended complaint and to allow defendant a reasonable time within which to answer, if he be so advised.
 

 Shinn, P. J., and Ford, J., concurred.
 

 A petition for a rehearing was denied January 6, 1960, and respondent’s petition for a hearing by the Supreme Court was denied February 3, 1960.
 

 [1]
 

 At the time the demurrer was sustained, the court stated plaintiff could have leave to amend. Counsel stated he elected to stand on the first amended complaint, whereupon the demurrer was sustained without leave.